MOTOR BANKERS CORPORATION *v.* C. I. T. CORPORATION.

1. CHATTEL MORTGAGES—TRUST RECEIPT—CONTRACTS.

In considering whether trust receipt is security in nature of chattel mortgage, court may consider trust receipt, accepted draft, and bill of sale, where all relate to single transaction and were within contemplation of parties.

2. SAME—UNRECORDED CHATTEL MORTGAGE VOID AS TO SUBSEQUENT GOOD-FAITH PURCHASERS OR MORTGAGEES.

Trust receipt given to secure payment of time draft accepted by buyer of automobile with retention of title to automobile in party receiving trust receipt is in nature of chattel mortgage, and, if not filed as such, is void as against subsequent pur-chasers or mortgagees in good faith (3 Comp. Laws 1929, § 13424).

Appeal from Wayne; Doty (Frank L.), J., presid-ing. Submitted January 22, 1932. (Docket No. 9, Calendar No. 35,971.) Decided April 4, 1932.

Case by Motor Bankers Corporation, a Michigan corporation, against C. I. T. Corporation, a Mary-land corporation, for conversion of an automobile. Judgment for plaintiff. Defendant appeals. Af-firmed.

*Goodenough, Voorhies, Long & Ryan,* for plain-tiff.

*Max Kahn* (*L. V. Pylkas,* of counsel), for defend-ant.

WIEST, J. This is an action to recover damages for an alleged conversion of an automobile. Deci-sion turns upon whether the following so-called trust

receipt, accompanied by an accepted time draft, was a conditional sale in the nature of a chattel mortgage, and, for want of registration, no protection against a subsequent good-faith purchaser or mortgagee.

"TRUST RECEIPT.

"Detroit, Michigan, March 8, 1929.

"Received from C. I. T. Corporation, the owner thereof (hereinafter termed C. I. T.) Hudson motor vehicle; model 7-pass. sedan; serial No. 41900; Motor No. 579231, complete with all standard catalogue attachments and equipments purchased under credit opened by C. I. T. for our account, in consideration whereof we agree, at our expense, to hold said motor vehicle in trust for C. I. T. as their property and agree to return the same on demand in good order and unused but with liberty to us to exhibit and to sell the same for their account for cash for not less than $1,401.30, the intention being to preserve unimpaired C. I. T.'s title thereto until the full payment of our acceptance of equal date and any other indebtedness due from us, and we further agree in the case of such sale to keep the proceeds separate from our funds and immediately hand such proceeds to C. I. T. without expense or cost to C. I. T. to apply thereon. The acceptance of time draft in the above amounts shall not be effective to terminate this trust. C. I. T. may at any time cancel this trust and repossess itself of said motor vehicle or the proceeds thereof. In the event of our insolvency, suspension or failure to pay the acceptance of even date or our breach of this trust all acceptances due from us to C. I. T. shall immediately become due and payable.

"We further agree to keep a separate account of all motor vehicles delivered to us under this or any like receipt and of the proceeds thereof when sold, to report any sale to C. I. T. immediately after the same is made, and to furnish to them on demand a

true and complete report for the preceding month. We will also permit them or their duly accredited representatives, to examine our books and the cars in our possession at all reasonable times during business hours.

"C. I. T. shall, during the entire time said car is held thereunder, keep said car insured against loss by fire and theft and cause a surety bond for the accounting for the car or proceeds thereof to be issued, and in the event of our failure to redeliver the said car on demand we shall, until redelivery thereof, pay as damages for detention for each month or portion thereof after demand one per cent of said sale price.

"We further agree to pay all costs, charges, expenses and disbursements, including a reasonable attorney's fee (15 per cent. of sale price of car is permitted by law) should C. I. T. find it necessary to protect its property in said car by legal proceedings involving the employment of an attorney-at-law, and agree that C. I. T. may sell said motor vehicle and apply the proceeds to advances made for our account and we agree to pay the balance if any and that the waiver of any default shall not operate as a waiver of subsequent defaults, but all rights hereunder shall continue notwithstanding any one or more waivers. We acknowledge receipt of a true copy of this agreement which shall be construed according to the laws of the State of New York.

"Signed THE IDEAL GARAGE,
                "Trustee-Bailee.
                "By OTTO E. HOLBROOK.
"Witness:  J. B. RICE.

"TIME DRAFT.
"1,401.30            Detroit, Michigan, March 8, 1929.
"On or before June 8, 1929, pay to the order of C. I. T. Corporation, one thousand four hundred one and 30/100 dollars, together with an attorney fee of 15 per cent., if permitted by law, should the holder

place this draft in the hands of an attorney for collection.

"Value received (without recourse on us) and charge to

"AARON DE ROY MOTOR CAR Co.
"By HARRY E. JOHNSON,
"Assistant Treasurer.

"To IDEAL GARAGE,

"Address River Rouge, Mich.

(Across face of draft)
"Accepted March 8, 1929
"Payable at Office
"C. I. T. Corporation
"310 So. Michigan Ave.
"Chicago, Ill.
"THE IDEAL GARAGE
"By OTTO E. HOLBROOK."

The Ideal Garage was a copartnership and sold automobiles at retail. Defendant is a finance corporation, and so is plaintiff. The Ideal Garage wanted a Hudson car for "floor plan" purposes. The car had to be obtained from a distributor of the manufacturer. Aaron DeRoy Motor Car Company was distributor for the Hudson Motor Car Company at Detroit, Michigan. Defendant finance corporation had an arrangement with the Hudson Motor Car Company for financing applications by retail dealers for cars. The Ideal Garage applied to the distributor for a Hudson car. This brought into action defendant's financing arrangement and occasioned the time draft drawn by the distributor on the Ideal Garage, payable to defendant, its acceptance by the dealer, execution of the trust receipt, delivery thereof to the distributor, bill of sale by the distributor to defendant, and delivery of the trust receipt and accepted time draft to defendant, payment of $1,374.28 by defendant to the distribu-

tor and payment of 10 per cent. of the invoice price
of the car by the Ideal Garage to the distributor.

The day the trust was executed the Ideal Garage,
by O. E. Holbrook, one of the partners, executed a
conditional sale contract of the car to O. E. Hol-
brook, and the same day the Ideal Garage, by O. E.
Holbrook, assigned the conditional sales contract
to plaintiff finance corporation, and it was filed in
the nature of a chattel mortgage on April 3, 1929.

In considering the nature of the trust receipt we
may consider along with it the accepted time draft
and the bill of sale to defendant, for all relate to
a single transaction and as a whole within the con-
templation of the dealer, the distributor, and the
finance corporation. The purpose and the effect of
the trust receipt was to secure payment of the ac-
cepted time draft, with retention of title to the car
in defendant until payment was made or obtained,
in whole or in part, under measures stipulated there-
in, inclusive of personal liability.

Trust receipts, financing importations, have long
been employed and accorded judicial sanction, but
adoption of the scheme with reference to auto-
mobiles is quite modern and without serious dif-
ficulty unless rights of *bona fide* purchasers from
the trust receiptor intervene and the so-called trust
is secret.

Under our holdings a trust receipt, accompanied
by the obligation of the receiptor to pay an agreed
price for an automobile, possession of which is
changed, and which permits suit upon the obligation
accompanying the trust receipt or the retaking and
resale of the car, with application of proceeds in re-
duction of obligation to pay and right to hold the
receiptor for the balance, is security in the nature
of a chattel mortgage, and if not filed as such, under

our recording laws (3 Comp. Laws 1929, § 13424), is void as against subsequent purchasers or mortgagees in good faith. *Burroughs Adding Machine Co.* v. *Wieselberg,* 230 Mich. 15; *Nelson* v. *Viergiver,* 230 Mich. 38.

We consider the acts of the distributor, the dealer, and the defendant in construing the trust receipt, and we decline to split the transaction and hold that it was less than security in the nature of a chattel mortgage because the dealer accepted the time draft, and executed the trust receipt to defendant and such papers, along with the bill of sale of the automobile, were turned over to defendant.

We have examined, but need not review, cases from other jurisdictions, for we have established our own rule with reference to instruments in the nature of a chattel mortgage.

The judgment is affirmed, with costs to plaintiff.

CLARK, C. J., and MCDONALD, POTTER, SHARPE, NORTH, FEAD, and BUTZEL, JJ., concurred.