[No. 24385. Department One. June 22, 1933.]

EUGENE D. IVY, *as Receiver, Appellant,* v. COMMERCIAL CREDIT COMPANY, *Respondent.*[1]

*Rigg, Brown & Halverson,* for appellant.

*LaBerge, Cheney & Hutcheson,* for respondent.

MITCHELL, J.—This action, consisting of six causes separately stated, was brought by the receiver of the Yakima Auto Company, a corporation of this state, against the Commercial Credit Company, a corporation of this state, to recover judgment for the reasonable value of six automobiles alleged to have been con-

[1]Reported in 23 P. (2d) 19.

verted by the defendant. The allegations of conversion were denied. Findings of fact, conclusions of law and judgment in favor of the defendant were signed and entered on the trial of the action. The plaintiff has appealed.

The findings of fact are acceptable to the appellant. In substance, they are that, at all times mentioned, the Yakima Auto Company was a Washington corporation, and on January 16, 1932, the superior court for Yakima county appointed appellant as receiver of the corporation, and that he duly qualified as such on that date; that the respondent, Commercial Credit Company, at all times mentioned, was a corporation organized under the laws of this state and qualified to transact business therein; that, on January 10, 1932, the Yakima Auto Company was insolvent, which insolvency was then known to the respondent, its officers and agents; that, on and prior to January 10, 1932, the Yakima Auto Company had in its possession the six automobiles (describing them), each of which came into the possession of the corporation by a transaction about as follows:

The car was shipped to Yakima by still another corporation, the owner, the bill of lading naming the owner as both consignor and consignee, with directions to the railway company to "notify Yakima Auto Company." At the same time, the owner or vendor executed a bill of sale of the automobile to the Commercial Credit Company, and drew a draft on the Commercial Credit Company, which draft was paid by the Commercial Credit Company, to whom the bill of sale and bill of lading were delivered. Thereafter, the Yakima Auto Company executed and delivered to the Commercial Credit Company an instrument designated a "trust receipt;" and "thereupon the automobiles

were unloaded and delivered to the Yakima Auto Company under and by virtue of the trust receipt.''

The bill of sale to the Commercial Credit Company of each automobile and the draft that accompanied it were attached to each other. The instruments are in ordinary form to accomplish the purpose of sale and accompanying draft, other than a recitation in the bill of sale that ''the grantee being the company which opened credit for the shipment or delivery of the motor vehicles above mentioned.'' The trust receipt, upon being dated, reads:

''Received from . . . Commercial Credit Company . . . the following described motor vehicles, complete with all standard catalogue attachments and equipment as a component part thereof, herein called 'Cars,' shipped or delivered to Undersigned under credit opened by Commercial Credit for account of Undersigned. . . .

[Six automobiles, describing them]

''In consideration thereof Undersigned agrees to hold said cars in trust for Commercial Credit as its property, and to return all or any of said cars to Commercial Credit upon demand; Commercial Credit at any time may examine said cars and the books or records of Undersigned with reference thereto. Commercial Credit may at any time cancel this trust and may take possession of said cars without notice or demand, and for such purpose it or its representatives may enter any premises at any time without legal process. Undersigned shall not lend, rent, mortgage, pledge, encumber, operate, use or demonstrate said cars, but may drive them from the place where delivery or custody is taken hereunder direct to Undersigned's place of storage where Undersigned shall keep the same properly housed without expense or liability to Commercial Credit. Undersigned does indemnify and hold harmless Commercial Credit from damages or liabilities of any nature, if any, while Undersigned is so driving said cars to said place of storage. Undersigned, before the termination of this trust, may sell

said cars for cash for not less than the sum or sums mentioned in the 'Whole-sale-storage' record of such cars, given by Commercial Credit to Undersigned, and immediately after such sale Undersigned shall deliver the proceeds thereof to Commercial Credit, and until delivery shall hold said proceeds in trust for Commercial Credit separate from the funds of Undersigned.

"The acceptance of a time draft by Undersigned or the negotiation of same and the assignment of this trust receipt shall not effect or terminate this trust, the intention being to preserve unimpaired the title and rights of Commercial Credit in and to said cars. If Undersigned fails to sell said cars or to pay said time draft or breaches this trust receipt, then Commercial Credit may retain any sums paid by Undersigned as a consideration for the privilege of displaying said cars and offering the same for sale.

"Commercial Credit shall insure said cars against the hazards of fire and theft while held by Undersigned hereunder for not less than the wholesale price thereof f. o. b. factory. Undersigned shall pay all costs and expenses, including attorney's reasonable fees, if permitted by law, that Commercial Credit may incur or pay to protect or enforce its rights hereunder whether by legal proceedings or otherwise.

"This trust receipt shall bind and inure to the benefit of the successors and assigns of Commercial Credit and Undersigned."

It appears that the receipt was acknowledged before a notary public.

It was further found that, while the automobiles were in the possession of the Yakima Auto Company by virtue of the trust receipts, they were, on January 10, 1932, delivered by the Yakima Auto Company to the respondent, Commercial Credit Company, and that the Commercial Credit Company took them away. The court further found that none of the written instruments was filed or recorded.

Upon the findings, the court concluded that the respondent, Commercial Credit Company, did not convert the automobiles.

Manifestly, the trust receipts signed by the Yakima Auto Company, the originals of which are not in the record since there is no statement of facts here, were on printed forms. The statement therein, viz: "The acceptance of a time draft by the Undersigned, or the negotiation of the same," has no application to this case, because the drafts accompanying the shipments were on the Commercial Credit Company, which promptly paid them.

Bearing in mind that this is a suit on behalf of the creditors of an insolvent corporation, the assignments of error present the one contention that the forms of the instruments constituted a subterfuge; that, altogether, the deals were credit transactions; and that the real purpose of the so-called bills of sale and trust receipts was to give the Commercial Credit Company security for loans actually made by it to an insolvent corporation.

The argument is that the transactions were contrary to the recording statutes and the decisions of this state against secret liens in chattel property, whether the same be attempted by bill of sale, which, by Rem. Rev. Stat., § 5827, has to be recorded, or by a chattel mortgage, which, by Rem. Rev. Stat., § 3780, must be acknowledged with an affidavit of good faith attached and be recorded, or by conditional sales contract, in all of which instances the intention of the parties and not necessarily the form of the instruments controls; some of the decisions being *Sayward v. Nunan,* 6 Wash. 87, 32 Pac. 1022; *Sayward v. Thayer,* 9 Wash. 22, 36 Pac. 966, 38 Pac. 137; *Hicks v. National Surety Co.,* 50 Wash. 16, 96 Pac. 515, 126 Am. St. 883; *Smith v. Allen,* 78 Wash. 135, 138 Pac. 683, Ann. Cas. 1915D

300; *Belcher v. Young,* 90 Wash. 303, 155 Pac. 1060; *Kato v. Union Oil Co.,* 92 Wash. 473, 159 Pac. 692; *Lyon v. Nourse,* 104 Wash. 309, 176 Pac. 359; *Sullivan v. Lewis,* 170 Wash. 413, 16 P. (2d) 834.

However, as we understand, appellant, in relying upon these authorities, assumes that it was intended, and that the legal effect of the transactions here was, that the Yakima Auto Company got title to the automobiles, and by its trust receipts gave the Commercial Credit Company security for the purchase price. The assumption goes too far, in our opinion. There is no statement of facts in the case, no testimony to show the circumstances surrounding the execution and delivery of the several written instruments involved. We have only the findings of fact. Appellant calls attention to the fact that in the bill of sale it is said: "The grantee being the company which opened credit for the shipment or delivery of the motor vehicles above mentioned." That contract was between the vendor and the Commercial Credit Company; the Yakima Auto Company was not mentioned in the instrument.

The inquiry here is not how the grantee in the bill of sale got title, but what was the nature of the obligations by which the Yakima Auto Company got possession of the automobiles from the Commercial Credit Company? The language in the trust receipts, which were signed by the Yakima Auto Company, viz: "The cars shipped or delivered to Undersigned under credit opened by Commercial Credit for account of Undersigned," is referred to by the appellant. Certainly, the cars were not shipped to the Yakima Auto Company; they were shipped by the owner to itself, accompanied by bills of sale to the Commercial Credit Company upon it paying drafts for the value of the cars. The drafts were paid, and the bills of sale delivered.

"Thereafter," the findings say, the cars were delivered by the Commercial Credit Company, upon the trust receipts being executed and delivered by the Yakima Auto Company.

If the total transaction in each case, by which the original vendors shipped the cars to Yakima, was originated by the efforts of the Commercial Credit Company, nevertheless there is no evidence of any understanding, other than that carried out, as expressed in the written instruments themselves, to the effect that the Commercial Credit Company would buy and pay for the automobiles and deliver them into the possession of the Yakima Auto Company upon the terms set out in the trust receipts. By the trust receipts, the Yakima Auto Company admits that the automobiles belonged to the Commercial Credit Company, which company had the right to take possession of the automobiles at any time it saw fit. In the trust receipts no promise is made to pay anything whatever for the automobiles, unless and until they were sold by the Yakima Auto Company. Trust receipts are in no way defined in the statute, and are to be interpreted according to the rules applicable to written instruments generally.

There is nothing substantial here showing any intention on the part of the Yakima Auto Company or the Commercial Credit Company contrary to the written instruments, as they appear upon their faces. The findings of fact support the judgment.

Affirmed.

BEALS, C. J., HOLCOMB, and MILLARD, JJ., concur.