No. 31,774

John Habegger, *Appellee*, v. (Ernest J. Skalla, *Defendant*), General Motors Acceptance Corporation, *Appellant*.

(34 P. 2d 113.)

Opinion filed July 7, 1934.

*William M. Shaffer, Carroll Walker,* both of Frankfort, and *Dean C. Allard,* of Kansas City, Mo., for the appellant.

*Carroll D. Smith,* of Blue Rapids, *W. W. Redmond* and *P. G. Wadham,* both of Marysville, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action on a promissory note executed by Ernest (E. J.) Skalla, doing business as the Skalla Motor Company, and to foreclose, as a chattel mortgage, a title note on an automobile given to secure its payment. As to the Acceptance Corporation, plaintiff alleged it claimed some right, title, or interest in the automobile, asked that it be required to set up its claim, and that the same be adjudged inferior to plaintiff's lien; and also alleged that such corporation had taken possession of the automobile, and prayed that it be required to surrender the same for sale to satisfy the lien of plaintiff, or that plaintiff have judgment against it to the extent

of his lien. Skalla made no defense to the action, and a verdict for plaintiff against him was directed. The Acceptance Corporation, for its principal defense, contended it owned the automobile and that Skalla had no right to encumber it. A jury trial resulted in a verdict and judgment for plaintiff, and the Acceptance Corporation alone has appealed.

Notice of appeal was not served on Skalla, and appellee moves to dismiss the appeal for that reason. Since Skalla joined issues with no party to the action, and did not deny his liability to plaintiff, he cannot be said to be an adverse party on whom notice of appeal must be served, within the meaning of our statute (R. S. 60-3306), as construed in *Peoples State Bank v. Hoisington Mercantile Ass'n,* 118 Kan. 61, 234 Pac. 71. (See, also, *Lebanon State Bank v. Finch,* 137 Kan. 114, 118, 19 P. 2d 709.)

Upon the issues presented between the plaintiff and the Acceptance Corporation the facts may be thus stated: Ernest Skalla, doing business as the Skalla Motor Company, was engaged in the garage and automobile sales business, first at Blue Rapids and later at Frankfort, and at times appears to have needed to borrow money. His uncle, plaintiff in this action, an elderly man, lived at Waterville, in the same county. In January, 1930, Skalla went to plaintiff to borrow $500, but had no security to offer, and plaintiff declined to make the loan. The next day Skalla returned and offered to secure the loan by a mortgage on a new Pontiac automobile. Plaintiff went with him to the bank and got the money, and, as security, took a mortgage in the form of a title note on the Pontiac car. He went to the county seat and examined the records to see if that car was mortgaged, found a mortgage of record against it, went to the mortgagee and inquired about it, was informed that the mortgage had been paid, and the mortgagee promptly released it. When this note came due in August, 1930, plaintiff went to Skalla for his money or the Pontiac car. Skalla said he could not pay the note in full at that time and could not well deliver the mortgaged car (perhaps he had sold it), but offered to pay $100 in cash and to give a new mortgage on a certain Oakland automobile then in his possession, and which he represented he owned, in the sum of $400. This was done, and the old note and mortgage surrendered and released of record. The mortgage on the Oakland automobile was in the form of a title note, but it is clear from the evidence, both of plaintiff and of Skalla, that the instrument was given as security for the $400 debt and as a

lien upon the Oakland car. Plaintiff took this to the register of deeds' office at the county seat, examined the records to see if any mortgage or lien was of record on the Oakland car, found there was none, and recorded the instrument. Sometime thereafter, and without knowledge of the plaintiff, and when, as the evidence disclosed, Skalla was not at his place of business, the Acceptance Corporation took the Oakland automobile and removed it to Kansas City. Later it was in the county of plaintiff's residence and plaintiff undertook to have it seized by the officers under his lien, but was unsuccessful in doing so.

The Acceptance Corporation claimed title to the Oakland automobile and the right .to take possession thereof, in disregard of plaintiff's lien, by virtue of a bill of sale executed by the manufacturer, the Oakland Motor Car Company, to it and a certain trust receipt, which reads as follows:

"Trust Receipt ·

"Received of General Motors Acceptance Corporation the motor vehicles described above.

"I (we) hereby acknowledge that said motor vehicles are the property of said General Motors Acceptance Corporation and agree to take and hold the same, at my (our) sole risk as to all loss or injury; for the purpose of storing said property; and I (we) hereby agree to keep said motor vehicles brand new and not to operate them for demonstrating or otherwise, except as may be necessary to drive said motor vehicles from freight depot or from above city to my (our) place of business with all due care at my (our) risk en route against all loss and damage to said motor vehicles, persons or property, and except as I (we) may be allowed by you in a special case to use the same for demonstrating upon our compliance with the conditions expressed in your instructions to us, and to return said motor vehicles to said General Motors Acceptance Corporation or its order upon demand; and pay and discharge all taxes, encumbrances and claims relative thereto. I (we) hereby agree not to sell, loan, deliver, pledge, mortgage, or otherwise dispose of said motor vehicles to any other person until after payment of amounts shown on dealer's record of purchase and release of like identification number herewith. I further agree that the deposit made by me (us), in connection with this transaction, may be applied for reimbursement for any expense incurred by General Motors Acceptance Corporation, in the event of breach of this trust or repossession of said motor vehicles.

"It is further agreed that no one has authority to vary the terms of this trust receipt."

The bill of sale above mentioned and the trust receipt were so printed as to form one paper. It had stamped across its face, besides its title, "Bill of Sale," the words, "Additional Collateral."

It described four automobiles by model, motor number and serial number and stated the "principal due" in dollars as to each of them, aggregating $2,601. When introduced in evidence at the trial it had noted thereon three payments of different dates, aggregating $1,-851.16, evidently on principal, and, in addition thereto, three items of "interest paid" on different dates, amounting to $25.95. These instruments were sent by the Acceptance Corporation to the Citizens National Bank of Frankfort, together with an order bill of lading for the four automobiles, a sight draft in the sum of $316.34, payable to the order of the Commerce Trust Company of Kansas City, and a promissory note payable to the Acceptance Corporation six months after date for $2,609, with interest at six per cent from date, and asked the bank to act for it as follows: To notify the Skalla Motor Company to call at the bank upon arrival of the motor vehicles covered by the bill of lading, and have him (1) pay sight draft, (2) date and sign trust receipt, (3) date and sign promissory note, and thereupon to deliver the bill of lading and to make the proper remittance. This was done in February, 1930, and Skalla took or received the automobiles at his place of business. Neither the bill of sale, trust receipt, nor any of the other instruments executed in connection therewith were placed of record in the office of the register of deeds.

The demurrer of the Acceptance Corporation to plaintiff's evidence was overruled. It elected to stand on the demurrer and offered no evidence, and the cause was submitted to the jury, with the result previously stated.

We find it not necessary to write a treatise on trust receipts. Those interested in the nature of this peculiar type of security will find extensive discussions of the subject in 22 Columbia Law Review, 395, 546; 29 id. 545; 36 Harvard Law Review, 229; 45 id. 304; 15 Cornell Law Quarterly, 543; and in the annotations 25 A. L. R. 332; 49 A. L. R. 282; 87 A. L. R. 302. The courts, especially in the later cases, are inclined to look through the form of the instrument to the real purpose of the parties, and, in that connection, to consider all the facts and circumstances, including other instruments executed as a part of the same transaction. Considering these in this case, it is clear that the trust receipt and accompanying papers were designed to and did evidence a debt from Skalla to the Acceptance Corporation, with the automobiles as security, and are tantamount to a chattel mortgage. It was valid, of course, be-

tween the parties, but unless recorded is not notice to creditors of Skalla and is void as to them. (R. S. 58-301; *Finance Corporation v. McCowan,* 108 Kan. 622, 196 Pac. 614.) In this court this view is not seriously controverted by appellant. Cases cited by appellee in support of it: *Bankers Corp. v. C. I. T. Corp.,* 258 Mich. 301, 241 N. W. 911; *McLeod-Nash Motors, Inc., v. Commercial Credit Trust,* 187 Minn. 452, 246 N. W. 17; *Root v. Republic Acceptance Corp. Appel.,* 279 Pa. 55, 123 Atl. 650; *General Motors Acceptance Corporation v. Berry,* 86 N. H. 280, 167 Atl. 553, are not commented on by appellant even in the reply brief. (See, also, the late cases of *Smith v. Commercial Credit Corporation,* 113 N. J. Eq. 12, 165 Atl. 637; affirmed on appeal, 115 N. J. Eq. 310, 170 Atl. 607; *Vonhof v. General Contract Purchase Corporation,* [N. J.] 170 Atl. 239.)

Appellant argues there was a misjoinder because plaintiff transacted business with Skalla as an individual, while the Acceptance Corporation dealt with the Skalla Motor Company. The petition alleged that Ernest Skalla was engaged in the garage business under the name and style of the Skalla Motor Company. This was not denied under oath and is therefore taken as true. No issue was raised by the pleadings in this case that the Skalla Motor Company was anything other than Ernest (E. J.) Skalla, hence the point is not well taken.

Appellant argues that the evidence disclosed plaintiff had knowledge of the rights and claims of the Acceptance Corporation at the time he took his mortgage on the Oakland automobile. The most favorable thing to say for appellant about that is that the evidence on that point was controverted, and the jury's general verdict for appellee is a finding against appellant. The finding is supported by sufficient evidence; indeed, it is difficult to see from the record how any other finding could have been made on this point.

Appellant argues that there was no consideration for the mortgage on the Oakland car for the reason that no money was paid by plaintiff to Skalla at that time. There was ample consideration, of course, in the surrender of the previous note secured by a mortgage on the Pontiac car for the new note secured by the Oakland car. We note the trust receipt gave Skalla as much right to pledge or mortgage the car as it did to sell it. The evidence which the jury was authorized to believe was to the effect that Skalla was in possession of this car, claimed to own it, and that plaintiff dealt with him innocent of any claim of appellant.

Appellant makes complaint of the language of several of the instructions. It is not necessary to examine these in detail. Considered as a whole they fairly presented the case to the jury.

We find no error in the record. The judgment of the court below is affirmed.