## GENERAL MOTORS ACCEPTANCE COR-
## PORATION v. KLINE.
### No. 7675.

Circuit Court of Appeals, Ninth Circuit.
July 8, 1935.

Rehearing Denied Aug. 26, 1935.

Eggerman . & Rosling, of Seattle, Wash., for appellant.

Sam L. Levinson, of Seattle, Wash., for appellee.

Before WILBUR, GARRECHT, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This action was brought in the superior court of the state of Washington, in and for King county, by appellee Kline, the receiver of the Kirksey Chevrolet Company, who had been appointed as such by the state court. The case was transferred to the District Court of the United States on motion of the defendant, General Motors Acceptance Corporation.

The action was one for the conversion of 14 automobiles alleged to be of the value of $8,339.55. It was alleged in the complaint and not denied, that on the 29th of January, 1931, the Kirksey Chevrolet Company was insolvent. The various documents evidencing the transaction were attached to the answer and their execution was admitted. The case was tried without a jury, and the District Court made its findings of fact and conclusions of law. The trial court found the receiver was appointed February 2, 1931; that at that time the appellant was a creditor of the insolvent in the amount of $8,500, and this amount has been increased as the result of subsequent litigation to $12,500; that the reasonable value of the automobiles on the date of seizure was $8,339.55; that the automobiles were in possession of the Kirksey Chevrolet Company, exposed for sale, and displayed in its salesroom to the public, some from four to six weeks, and others from seven to ten days; that the automobiles were seized on the 29th of January by the appellant without right upon their claim asserted on certain trust receipts; that on January 7th, 9th, 10th, and 20th, the Kirksey Chevrolet Company executed and delivered to the appellant four promissory notes for $1,958, $1,952, $1,958, and $2,313, respectively; that on December 30, 1930, the Chevrolet Motor Company of California executed to the appellant certain bills of sale covering the automobiles in question; that attached to each bill of sale was a trust receipt which was executed by the Kirksey Chevrolet Com-

pany at the time of the delivery to the Kirksey Chevrolet Company of the automobiles described in the bill of sale. This trust receipt acknowledged that the motor vehicles in question are the property of the General Motors Acceptance Corporation; that the Kirksey Chevrolet Company agreed to take and hold the same at its own risk, not to operate them for demonstration or otherwise, and return the motor vehicle to the General Motors Acceptance Corporation on its order or demand, to pay or discharge all taxes and encumbrances and claims relative thereto, and not to sell, loan, deliver, pledge, mortgage, or otherwise dispose of said motor vehicles to any other person until after payment of amounts shown on dealer's record of purchase and release of like identification number herewith; it was further agreed that the deposit made by the Kirksey Chevrolet Company in connection with the transaction may be applied for reimbursement for any expenses incurred by the General Motors Acceptance Corporation in the event of breach of this trust or repossession of said vehicle. The court further found that the promissory notes payable three months after date, and the bills of sale, were sent to the bank with instructions that upon the execution of the notes and trust receipt by the Kirksey Chevrolet Company the automobiles be delivered to that company and they were so delivered and placed in the salesroom and showroom of the Kirksey Chevrolet Company for the purpose of sale, and that, upon default in the payment of the indebtedness above named, defendant sought to obtain possession of the automobiles from the Kirksey Chevrolet Company and made demand therefor, which was refused, but nevertheless took possession of the automobiles. It is not clear just what is meant by this finding in view of the fact that the promissory notes in question were not yet due, nor is it entirely clear what is intended by the finding of the court with reference to the automobiles which were delivered for the purpose of sale "and sold in due course and payments made from time to time, with the result that the amount as aforestated was due and unpaid, and that there is due and unpaid from the Kirksey Chevrolet Company the amount of $8500," for it is clear that the automobiles were not sold by the Kirksey Chevrolet Company. As conclusions of law the court held that the receiver was entitled to judgment for the amount demanded in his complaint, and

stated: "The trust receipt is neither a chattel mortgage nor a conditional sale, and cannot have the operation or effect of retaining title, within the provisions of the laws of the state of Washington, the defendant not having complied with the recordation acts, nor the provisions requiring special oath to chattel mortgages with relation to the indebtedness at the time of delivery or obtaining evidences of indebtedness." It is not entirely clear whether the trial judge intended to use the word "either" or "neither." If it were "neither a chattel mortgage nor a conditional sale," it is not contended that the laws of Washington required its recordation. If the recordation was not required by the law of Washington, an unauthorized recordation would have no effect whatever. Flynn v. Garford Motor Truck Co., 149 Wash. 264, 270 P. 806.

The only question for review is whether the findings support the judgment.

According to the arrangement, the title to the automobiles passed from the manufacturer to the appellant and remained in the appellant unless the execution of the promissory notes and trust agreement by the Kirksey Chevrolet Company operated to transfer title to the Kirksey Chevrolet Company so far as the creditors are concerned, notwithstanding the fact that the trust agreement expressly provided to the contrary. As between the Kirksey Chevrolet Company and the General Motors Acceptance Corporation the contract is valid and is to be enforced as to them according to its terms. By the agreement the General Motors Acceptance Corporation was clearly within its right in taking possession of the automobiles in question. This conclusion was reached by the Supreme Court of Washington in a decision rendered by it subsequent to the argument of this case in such a situation. Johnson-Stephens & Shinkle Shoe Co. v. Marlatt & Miller, Inc., 44 P.(2d) 819. The court in that case held that the agreement was not to be construed as one of consignment. For the purposes of the opinion the court accepted the contention of the appellant that the contract was one of conditional sale which by the terms of the Washington statute, Rem. Rev. Stat., § 3790, was required to be recorded, and that in default of such recordation the sale would be absolute as to purchasers, encumbrancers, and subsequent creditors in good faith. As the rights of third persons were not involved, the court sustained the right of

the holder of the trust receipt to take possession. The appellee in the case at bar, however, contends that the transaction between the Kirksey Chevrolet Company and the General Motors Acceptance Corporation was in legal effect a chattel mortgage by the former to the latter, and because not recorded the agreement was void under the law of Washington, both as to existing and subsequent creditors, regardless of whether or not they have acquired liens on the property. This is in accordance with an express provision to that effect in section 3780, Rem. Rev. Stat. of Washington, in the case of unrecorded chattel mortgages. In the case of Seattle Association of Credit Men v. University Chevrolet Co., 43 P.(2d) 46, the Supreme Court of Washington stated that such an unrecorded chattel mortgage was void as to existing and subsequent creditors, and that as to them the title was in the mortgagor free from the lien of the mortgage.

The question as to the nature and effect of these trust receipts is not a new one. They have been variously interpreted by various courts. The decisions with reference to their effect and validity are dependent upon the laws of the state in which the transaction occurred, and the diversity of opinion is due in part to statutory differences.

If the title to the automobiles had passed in the first instance from the manufacturer to the Kirksey Chevrolet Company and the arrangement had been made between that company and the appellant contemporaneously or subsequently thereto, by which the appellant advanced money to the Kirksey Chevrolet Company either for the purpose of paying the purchase price of the automobiles or for any other purpose and the trust receipt and notes here involved had been executed under those circumstances, the transaction would unquestionably be in legal effect a chattel mortgage. Such was the holding of the Circuit Court of Appeals for the Second Circuit in Re A. E. Fountain, Inc., 282 F. 816, 826, 25 A. L. R. 319, in a well-considered opinion. The court, however, in that case carefully pointed out the distinction between trust receipts wherein the title of the holder was derived from the person who executed the trust receipt and those in which the title of the holder was derived from some one other than the debtor. In the opinion in that case the court stated the distinction as follows: "The only cases where the holders of trust receipts have been allowed by this court to prevail against the ultimate purchaser or his trustee in bankruptcy, have been those where the title of the holder of the trust receipt was derived from some one other than the debtor. In re Cattus, 183 F. 733, 106 C. C. A. 171; In re Coe, 183 F. 745, 106 C. C. A. 181; In re Marks & Co., 222 F. 52, 137 C. C. A. 590. The same is true of the decision of the Supreme Court in Dows v. National Exch. Bk., 91 U. S. 618 [23 L. Ed. 214], a case which arose in the Southern District of New York. The federal courts in the Third Circuit have adopted the same view."

In a recent decision by the same court, In re James, Inc. (C. C. A. 2) 30 F.(2d) 555, the question of the effect of a transaction similar to that in the case at bar was considered at length. One of the trust receipts was in favor of the General Motors Acceptance Corporation. It contained the same provisions with reference to the disposition of the automobiles covered by the trust receipt, as in the case at bar. Id. (C. C. A.) 30 F.(2d) 555, 556, 557. Judge Manton carefully points out in the opinion that this form of security was one which had long been used in connection with the importation of merchandise. He concluded that the form of security was not a chattel mortgage and not required to be recorded as such. He said in part: "The holder of a trust receipt, if he derives his security title from a person other than the one responsible for the satisfaction of the obligation which the property secures, is not obliged to file his security as is required in the case of a chattel mortgage." He also concluded that in such a case the contract was not a conditional sale required to be recorded as such under the law of New York. It was held by the Circuit Court of Appeals for the Second Circuit that under the circumstances of that case title having been acquired by the General Motors Acceptance Corporation the contracts between that company and the dealer were valid and constituted a first lien against the fund held by the trustees in bankruptcy which resulted from the sale of the automobiles.

In Roth v. Smith, 215 F. 82, the Circuit Court of Appeals for the Third Circuit upheld a similar transaction as against a trustee in bankruptcy although it does not appear from the opinion that the recording acts of Pennsylvania were considered or involved.

The Circuit Court of Appeals for the Sixth Circuit in a recent case, Hamilton Nat'l Bank v. McCallum, 58 F.(2d) 912, 913, in dealing with a trust receipt issued in connection with the sale of Chrysler motorcars in the state of Tennessee, followed the rule announced in Re James, Inc. (C. C. A.) 30 F.(2d) 555, supra; Judge Simons speaking for the court, said: "Trust receipts have generally been held not subject to recording or filing acts, probably because such statutes are to prevent secret liens upon property of persons who have had prior possession and ownership of the property. And it is undoubtedly for this very reason that holders of trust receipts have been allowed to prevail against the ultimate purchaser or his trustee in bankruptcy only where the title of the holder was derived from some one other than the debtor."

In a still later case by the same court, In re Collinwood Motor Sales, 72 F.(2d) 137, 140, it was held that under the law of Ohio, which controlled the transaction, recordation of the trust agreement was essential in order to protect the trustee against claims of creditors, because of the very broad scope of section 8568 of the General Code of Ohio. It was, however, specifically held that the contract was not a chattel mortgage. We quote from the opinion of Judge Allen in that regard as follows: "The present contract comes within the terms of section 8568, but it is not a chattel mortgage. Title had been conveyed to the Credit Company by the Ford Motor Company, and was by the trust receipt retained in the Credit Company. Obviously a chattel mortgage could not be given to the owner of the chattel. There was no pledge, for the possession of the car remained in the bankrupt."

In Houck v. Gen'l Motors Acceptance Corp., 44 F.(2d) 410, the District Court for the Western District of Pennsylvania followed the decision of the Circuit Court of Appeals for the Second Circuit in Re James, Inc., supra.

Returning to the decisions of the Supreme Court of the State of Washington, we find that in Ivy v. Commercial Credit Co., 173 Wash. 360, 23 P.(2d) 19, 21, a trust receipt similar to that involved in the case at bar was under consideration. The action was brought by a receiver of an insolvent corporation, as in the case at bar. The court said: "Bearing in mind that this is a suit on behalf of the creditors of an insolvent corporation, the assignments of error present the one contention that the forms of the instruments constituted a subterfuge, that altogether the deals were credit transactions, and that the real purpose of the so-called bills of sale and trust receipts was to give the Commercial Credit Company security for loans actually made by it to an insolvent corporation. The argument is that the transactions were contrary to the recording statutes and the decisions of this state against secret liens in chattel property, whether the same be attempted by bill of sale, which by section 5827, Rem. Rev. Stat., has to be recorded, or by a chattel mortgage, which by section 3780, Rem. Rev. Stat., must be acknowledged with an affidavit of good faith attached and be recorded, or by conditional sales contract, in all of which instances the intention of the parties and not necessarily the form of the instruments controls. * * * However, as we understand, appellant, in relying upon these authorities, assumes that it was intended, and that the legal effect of the transactions here was, that the Yakima Auto Company got title to the automobiles, and by its trust receipts gave the Commercial Credit Company security for the purchase price. The assumption goes too far, in our opinion. * * * The inquiry here is not how the grantee in the bill of sale got title, but what was the nature of the obligations by which the Yakima Auto Company got possession of the automobiles from the Commercial Credit Company? * * * By the trust receipts, the Yakima Auto Company admits that the automobiles belonged to the Commercial Credit Company, which company had the right to take possession of the automobiles at any time it saw fit. In the trust receipts no promise is made to pay anything whatever for the automobiles unless and until they were sold by the Yakima Auto Company. Trust receipts are in no way defined in the statute, and are to be interpreted according to the rules applicable to written instruments generally." In view of this decision which definitely holds that the contract in question is not required to be recorded by the law of Washington either as a chattel mortgage, conditional sales contract, or a bill of sale, the only question remaining for our consideration is whether or not the giving of 90-day promissory notes by the Kirksey Chevrolet Company to the appellant for the value of the automobiles differentiates

the case from the decision of the Supreme Court of Washington from which we have just quoted.

It will be observed that the giving of such notes is analogous to the use of trade acceptances in connection with the trust receipts commonly used in the importation of merchandise, which constitute an obligation of the dealer, and to the time drafts or acceptances referred to in the opinion in Re James, Inc. (C. C. A.) 30 F.(2d) 555, 556, supra. Whether or not the Supreme Court of Washington will follow decisions similar to that of the Circuit Court of Appeals of the Second Circuit in Re James, Inc., supra, cannot be known until the exact question is submitted to it. If the documents constituting the agreement between the appellant and the Kirksey Chevrolet·Company had expressly provided that the promissory notes were to be paid regardless of whether the automobiles were repossessed by the holder of the trust receipt, we would have one of the indicia of a chattel mortgage that is not present in the case at bar. West American Finance Co. v. Finstad, 146 Wash. 315, 262 P. 636; Kelly v. Price, 148 Wash. 542, 269 P. 842; Raymond Bros. Impact Pulverizer Co. v. Thomas, 159 Wash. 550, 294 P. 219.

We conclude that under the law of the state of Washington the automobiles in question belonged to the appellant, and that it is not liable for conversion thereof.

The appellee calls attention to a number of decisions by state courts in which it had been held that under the laws of the state where the transaction occurred a transaction similar, if not identical to that in the case at bar, was in legal effect a chattel mortgage from the dealer to the finance company requiring recordation under the laws of the state. General Motors A. C. v. Berry et al., 86 N. H. 280, 167 A. 553; General M. A. C. v. Bettes (Tex. Civ. App.) 57 S.W.(2d) 263; General M. A. C. v. Sharp Motor Sales Co., 233 Ky. 290, 25 S.W.(2d) 405; Motor Bankers' Corporation v. C. I. T. Corp., 258 Mich. 301, 241 N. W. 911; Smith v. Comm'l Credit Corp., 113 N. J. Eq. 12, 165 A. 637; affirmed Morrow v. Smith, 115 N. J. Eq. 310, 170 A. 607; Habegger v. Skalla, 140 Kan. 166, 34 P.(2d) 113. He also calls attention to certain federal cases dealing with the effect of similar transactions under the laws of the various states in which the transaction occurred. Keystone Finance Corp. v. Krueger (C. C. A.) 17 F.(2d) 904, 905;

In re Bettman-Johnson Co. (C. C. A.) 250 F. 657; Industrial Finance Corp. v. Capplemann (C. C. A.) 284 F. 8; Commerce-Guardian Trust & Savings Bank v. Devlin (C. C. A.) 6 F.(2d) 518; Commercial Inv. Trust Corp. v. Wilson (C. C. A.) 58 F.(2d) 910; In re Draughn & Steel Motor Co. (D. C.) 49 F.(2d) 636; In re Perlhefter (D. C.) 177 F. 299; In re Cullen (D. C.) 282 F. 902.

It is unnecessary to analyze these cases in detail or to distinguish them from the case at bar because the question here must be determined in accordance with the recording laws of the state of Washington as affecting the rights of creditors.

Judgment reversed.