[No. 26374.   Department One.   May 6, 1937.]

GENERAL MOTORS ACCEPTANCE CORPORATION, *Respondent,* v. SEATTLE ASSOCIATION OF CREDIT MEN, *Appellant.*[1]

*Mifflin & Mifflin,* for appellant.

*Eggerman & Rosling,* for respondent.

MAIN, J.—This was an action in replevin for the purpose of recovering the possession of six automo-

[1]Reported in 67 P. (2d) 882.

biles, three of which were new and the other three were what are referred to as repossessed cars. The trial was to the court without a jury, and resulted in findings of fact from which it was concluded that the plaintiff was entitled to the possession of the cars. From a judgment entered to this effect, the defendant appeals.

The Chevrolet Motor Company is a manufacturer of automobiles, with an assembly plant in the city of Oakland, California. W. S. McNamara & Co., a corporation, was engaged in the business, in the city of Seattle, of selling automobiles at retail. The General Motors Acceptance Corporation, the respondent, appears to have been the financial agent through which the title of the cars passed from the motor company to the dealer. The appellant, the Seattle Association of Credit Men, is the assignee of the McNamara company, taking the property over for the benefit of the general creditors after the insolvency of that corporation. The action was against the credit association for the possession of the cars, as mentioned, which were turned over to it by the McNamara company at the time the assignment was made.

The transaction by which the automobiles passed from the assembly plant onto the sales floor of the McNamara company was substantially this: The McNamara company placed an order with the Chevrolet Motor Company assembly plant at Oakland for the cars, specifying that they were to be handled through the General Motors Acceptance Corporation's flooring plan. The Chevrolet Motor Company at Oakland is supplied with the General Motors Acceptance Corporation's flooring plan documents and signs a bill of sale covering the particular automobiles in favor of the General Motors Acceptance Corporation. Then the bill of lading, the bill of sale, a promissory note,

and trust receipt, with a sight draft for ten per cent of the purchase price, were forwarded to a bank in Seattle, with direction to notify the McNamara company. After that company received the notice, it calls at the bank, signs the trust receipt and note, obtains the bill of lading for the automobiles, and pays the draft for ten per cent of the purchase price, which money is forwarded to the assembly plant at Oakland, from which the cars were ordered.

The bill of sale to the General Motors Acceptance Corporation and the trust receipt are upon the same sheet of paper and were not delivered until after the draft has been paid and the bill of lading turned over to the McNamara company. The General Motors Acceptance Corporation pays the balance out of the purchase price to the Chevrolet Motor Company. After these things have been done, the McNamara company obtains the automobiles upon presentation of the bill of lading, takes them to its place of business, and places them on the showroom or sales floor, with sales tags placed thereon. When an automobile is sold, if for cash, the money is paid over to the General Motors Acceptance Corporation to be applied on the note. If the automobile is sold upon a conditional sales contract, that contract is assigned to the General Motors Acceptance Corporation.

We shall first consider the new cars, and in this connection we here set forth a copy of the trust receipt:

"Received of General Motors Acceptance Corporation the motor vehicles described above.

"I (we) hereby acknowledge that said motor vehicles are the property of said General Motors Acceptance Corporation and agree to take and hold the same, at my (our) sole risk as to all loss or injury, for the purpose of storing said property; and I (we) hereby agree to keep said motor vehicles brand new and not to operate them for demonstrating or otherwise, except as may be necessary to drive said motor

vehicles from freight depot or from above city to my (our) place of business with all due care at my (our) risk en route against all loss and damage to said motor vehicles, persons or property, and except as I (we) may be allowed by you in a special case to use the same for demonstrating upon our compliance with the conditions expressed in your instructions to us, and to return said motor vehicles to said General Motors Acceptance Corporation or its order upon demand at any time and for any reason; and pay and discharge all taxes, encumbrances and claims relative thereto. I (we) hereby agree not to sell, loan, deliver, pledge, mortgage, or otherwise dispose of said motor vehicles to any other person until after payment of amounts shown on dealer's record of purchase and release of like identification number herewith. I (we) further agree that the deposit made by me (us), in connection with this transaction, may be applied for reimbursement for any expense and/or loss incurred by General Motors Acceptance Corporation, in the event of breach of this trust or repossession of said motor vehicles.

"It is further agreed that no one has authority to vary the terms of this trust receipt."

The promissory note given is a general obligation to pay and provides that:

"Six (6) Months after date, for value received, I (we) promise to pay to the order of General Motors Acceptance Corporation at their office 1326 Fifth Ave., Seattle, Washington Twenty Two Hundred Twenty Six and 49/100 Dollars $2226.49 with interest at 6% per annum from the date hereof. . . ."

This is the note signed by the McNamara company.

The trust receipt was at no time filed for record. In fact, there was no attempt to comply with the recording statutes.

The question is whether, it not having been recorded, the General Motors Acceptance Corporation has a superior right in the automobiles to those of the general creditors who have neither actual nor constructive notice of its existence. The determination

of this question depends upon whether the trust receipt, read in the light of all the transactions, is either, in effect, a chattel mortgage or a conditional bill of sale. If it is either, the rights of the general creditors are superior.

In determining the meaning and intent of the parties, courts look beyond the form and from the evidence determine what the real transaction was. *In re Bettman-Johnson Co.*, 250 Fed. 657; *Lyon v. Nourse*, 104 Wash. 309, 176 Pac. 359. Secret liens whereby rights are acquired or attempted to be acquired or retained at the expense of general creditors are not favored in the law. *Ivy v. Commercial Credit Co.*, 173 Wash. 360, 23 P. (2d) 19.

Upon the question of whether the trust receipt is superior to the rights of general creditors, under facts like, or substantially like, those presented in this case, the authorities are not in harmony. Some courts hold that the transaction is, when the trust receipt is read in connection with the other documents in evidence, a chattel mortgage; others, that it is a conditional bill of sale; and there is a third group which holds that it is a document which is not required to be recorded or filed for record.

In *General Motors Acceptance Corp. v. Berry*, 86 N. H. 280, 167 Atl. 553, the same question was there presented as is here, and, after a comprehensive review of the authorities, that court concluded:

"We are of the opinion, however, that the situation presents all the essential elements of a chattel mortgage. To be sure, in the case of the ordinary mortgage the security title is transferred from debtor to creditor. But the transaction is no less a mortgage if the security is transferred to the creditor by a third person. 1 Jones, Mortgages (8th *ed.*), *s.* 405, and cases cited; 19 Cal. Law Rev., 268; 22 Columbia Law Rev. 402.

"The rule is elementary that the intention of the parties is to be gathered from the various instruments,

construed together (*Hill v. Huntress,* 43 N. H. 480, 483) in the light of the surrounding circumstances (*Weston v. Ball,* 80 N. H. 275, 276, 277, and cases cited).

"In the present case, the sales company applied to Wentworth, the seller, for the automobiles in question, paying him one-tenth of the purchase price and signing a promissory note for the balance, payable to the plaintiff. The sales company was engaged in retailing cars and is designated in both note and receipt as a dealer. The cars were obtained for exhibition and sale. The sales company assumed the risk of all loss or injury to the cars, and agreed to pay all taxes, encumbrances and claims relative thereto. By the terms of a document entitled 'Instructions to Dealer,' provision is made for the release of specific cars upon payment of stipulated amounts to be applied in reduction of the amount due on the dealer's promissory note.

"The only logical inference to be drawn from these facts is that the title which Wentworth conveyed to the plaintiff, at the sales company's implied request, was for the purpose of security only, and that the sales company bought and received a beneficial interest in the cars."

In *Vonhof v. General Contract Purchase Corp.,* 115 N. J. Eq. 239, 170 Atl. 239, it was said:

"The equitable concept of the trust receipts under consideration is that of declarations of trust, that the defunct company held its own property in trust for the finance company (*Janes v. Falk,* 50 N. J. Eq. 468) as security for the debt; a valid trust and enforcible in equity between the parties. The legal effect is that of a chattel mortgage, void as to creditors for failure of verification and recording. That is the settled law of this state. [Citing authorities.]"

The cases of *Motor Bankers Corp. v. C. I. T. Corp.,* 258 Mich. 301, 241 N. W. 911, *Habegger v. Skalla,* 140 Kan. 166, 34 P. (2d) 113, and *General Motors Acceptance Corp. v. Bettes,* 57 S. W. (2d) (Tex. Civ. App.) 263, are to the same effect.

In the cases of *General Motors Acceptance Corp. v. Mayberry,* 195 N. C. 508, 142 S. E. 767, and *General Motors Acceptance Corp. v. Whitely,* 217 Iowa 998, 252 N. W. 779, the trust receipt is held to be, in effect, a conditional sale contract.

It is not necessary here to determine whether the correct view is that of a chattel mortgage or a conditional sale, because, if either, under the recording laws of this state, the trust receipt not being recorded or filed for record, the rights of general creditors are superior to the rights of one claiming under the trust receipt. There are a number of Federal circuit court cases, as well as two or three Federal district court cases, which hold, unequivocally, that the trust receipt protects the right of the holder, even though the recording laws are not complied with. *General Motors Acceptance Corp. v. Kline,* 78 F. (2d) 618; *In re James, Inc.,* 30 F. (2d) 555; *In re Bell Motor Co.,* 45 F. (2d) 19. In addition to these, there are, as said, two or three Federal district court cases to the same effect.

So far as we are informed, no state court of last resort, under facts comparable to those which are presented in this case, has sustained the right of the holder of the trust receipt as being superior to that of the general creditors or subsequent purchasers of an insolvent debtor. This is said notwithstanding the fact that the case of *General Motors Acceptance Corp. v. Hupfer,* 113 Neb. 228, 202 N. W. 627, supports the superiority of the trust receipt. But that case is clearly distinguishable. There, the dealer had but one use, as stated in the opinion, to make of the cars, and that was to display them, and he had but one trust, and that was to care for and protect them. There is nothing in that case, as here, to show that the dealer paid a part of the purchase price at the time he re-

ceived the bill of lading and signed a negotiable promissory note for the balance.

One of the principal tests by which to determine whether a document or transaction results in a security, or there is retention of ownership, is a binding promise to pay on the part of the dealer. *General Motors Acceptance Corp. v. Whitely,* 217 Iowa 998, 252 N. W. 779. Where a promissory note is not of the same tenor and effect as the instrument by which its payment is secured, the terms of the note will govern. *Lovell v. Musselman,* 81 Wash. 477, 142 Pac. 1143; *Van Tassel v. McGrail,* 93 Wash. 380, 160 Pac. 1053.

After reading and considering the authorities representing the different views, we conclude that the General Motors Acceptance Corporation, in this case, held the trust receipt as security. If the transaction was, in effect, a chattel mortgage, then it was held as security in support of its chattel lien. On the other hand, if the transaction was, in effect, a conditional bill of sale, it held the title as security for the payment of the debt evidenced by the promissory note.

We now come to the case of *Ivy v. Commercial Credit Co.,* 173 Wash. 360, 23 P. (2d) 19, upon which much reliance has been placed by the respondent. That case came here upon the findings of fact alone. No evidence was brought to this court. There was nothing in the record, as brought here, from which the court could look through the form, as it appeared in the trust receipt, and determine from the evidence the exact nature of the transaction. There was in that case no finding (a) that the cars were ordered by the dealer direct from the manufacturer; (b) that the dealer made any down payment; or (c) that a negotiable promissory note was given for the balance due. We do not regard the decision in that case as controlling.

Here, in effect, to recapitulate, the dealer made a down payment of ten per cent which went directly to the manufacturer. . It gave a negotiable promissory note for the balance due. By authority of the General Motors Acceptance Corporation, it placed the automobiles upon its sales floor with sales tags thereon. When a sale was made thereafter, if for cash, remittance was made to the acceptance corporation, or if by conditional bill of sale, that document was assigned. While we recognize that the Federal courts above mentioned have taken the opposite view, we are not disposed to follow them. It is our opinion that the sound and just rule is the one for which the state courts of last resort, above cited, have given their support.

We now come to what are called the repossessed cars. Those, as already appears, were automobiles that were sold by the dealer upon conditional sale contracts. At the time of the sale, the conditional sale contracts were endorsed and delivered to the General Motors Acceptance Corporation. Subsequently, the cars were repossessed by the dealer. They remained upon his sales floor for sale, and, when sold, the proceeds were turned over to the acceptance corporation. They were held, after being repossessed, upon the following receipt signed by the dealer:

"Receipt for Repossessed Product
"Identification No. 94120
"The undersigned dealer hereby acknowledged receipt from GMAC of the following:

| "Chevrolet | Roadster | 1934 | 4177517 |
| Make | Model | Year | Motor No. |

"6DA05-19851
Serial No.

for storage purposes only. It is understood that the undersigned will be liable for any charges which may

accrue against the product and agrees that the product will not be disposed of until the outstanding balance due General Motors Acceptance Corporation is paid. "Date 12-4-34      (Signed) W. S. McNAMARA & Co.

Dealer

By B. A. RIEBE."

It will be observed that this receipt recites that the automobile covered thereby was held by the dealer "for storage purposes only." The evidence shows that this is not correct. The fact is, the automobile was held for sale. We think nothing further need be said upon this branch of the case, because it necessarily follows that, if the trust receipt did not protect the acceptance corporation, certainly this one does not.

The judgment will be reversed, and the cause remanded with direction to proceed in accordance with this opinion.

STEINERT, C. J., BEALS, MILLARD, and BLAKE, JJ., concur.