GENERAL MOTORS ACCEPTANCE CORPORATION,
Appellant, v. WHITFIELD, Respondent.

(253 N. W. 450.)

(File No. 7563.   Opinion filed March 6, 1934.)

*Bielski & Elliott* and *John P. McQuillen,* all of Sioux Falls, for Appellant.

*Walter Conway,* Attorney General, and *Louis N. Crill,* of Sioux Falls, for Respondent.

CAMPBELL, J. On June 5, 1931, a Sioux Falls corporation engaged in the business of selling electric refrigerators commonly know as Frigidaires sold and delivered a Frigidaire to one Bessler upon an agreement of conditional sale, providing that Bessler should pay the purchase price thereof in installments over a period of months and that title and ownership should remain in the vendor until full payment of the purchase price, which conditional sale contract was duly filed for record on June 25, 1931. Plaintiff herein has now succeeded to all the rights and duties of the conditional vendor. On October 26, 1932, defendant, as county treasurer of Minnehaha county, issued a distress warrant against the conditional vendee Bessler for delinquent personal property taxes duly levied and assessed against said Bessler for the years 1925 to 1931, inclusive, and delivered the same to the tax collector of Minnehaha county, who seized and took into his possession the Frigidaire above mentioned and gave notice to plaintiff and to Bessler that he would sell the same on November 9, 1932, to satisfy the delinquent taxes of Bessler above mentioned unless the same were sooner paid with interest and costs. In order to prevent the threatened sale, plaintiff, under written protest, paid said delinquent taxes and instituted the present action to recover the amount thereof pursuant to section 6826, R. C. 1919, pleading the facts fully and claiming that said Frigidaire was not subject to seizure

and sale for the taxes in question. Defendant demurred to the complaint upon the ground that the same did not state facts sufficient to constitute a cause of action, and from an order sustaining this demurrer plaintiff has now appealed.

Section 2191, Rev. Pol. Code 1903, reads as follows: "All taxes assessed upon personal property within this state shall be a first lien on all personal property of the person against whom personal taxes are assessed, from and after December first in each year." By section 2, c. 350, Laws 1913, the above section was amended by changing the date to "from and after January first in each year," and as so amended the section is still in force, having now become section 6759, R. C. 1919. In Minneapolis Threshing Machine Co. v. Roberts County (1914) 34 S. D. 498, 149 N. W. 163, L. R. A. 1915D, 886, this court held that the tax lien established by the above statute was a paramount lien and had priority over chattel mortgage liens even though such mortgage liens were created and filed before the date fixed for the coming in of the tax lien. By J. I. Case Threshing Machine Co. v. Bentson (1930) 57 S. D. 244, 231 N. W. 948, the doctrine of the Minneapolis Threshing Machine Case was limited or qualified by holding that personal property of a delinquent tax debtor passed from his hands free of any lien for taxes, though apparently affirming the doctrine of the Minneapolis Threshing Machine Case to the extent of holding that the tax lien existed and was paramount and susceptible of enforcement as long as the tax debtor continued to own the property. In State v. One Pontiac Coach (1929) 55 S. D. 8, 224 N. W. 176, we held, and we think rightly, that a conditional vendor of an automobile was not the "owner" of said automobile within the contemplation of chapter 204, Laws 1925, providing that an automobile unlawfully used for the transportation of intoxicating liquor should be forfeited and sold "unless good cause is shown to the contrary by the owner." In Massey-Harris Co. v. Lerum (1932) 60 S. D. 12, 242 N. W. 597, we held, in substance, that a reaper thresher conditionally sold and in possession of the conditional vendee on the taxing date for the year 1930 was assessable to him for 1930 tax and after January 1, 1931, was subject to levy and sale for all delinquent personal property tax of the conditional vendee for 1930, including, not only the tax levied against him by virtue of his possession of the reaper thresher itself,

but all other personal property tax levied and assessed against him for the year 1930.

■ It is quite clear that the learned trial judge sustained the demurrer below on the authority of the Massey-Harris Case, and it is on that case that respondent relies on the appeal. There is, of course, a fact difference in the two cases. It is, we think, the law, as stated in the Massey-Harris Case, that property conditionally sold and in possession of the vendee may be assessed against him in its entirety if the state sees fit to so do and the state is not obligated to take cognizance so far as concerns the matter of assessment of the division of interests in the property which the parties have undertaken to establish by the conditional sale contract. In the Massey-Harris Case the effort was to collect the delinquent personal property tax of the vendee for the single year 1930. For that year the reaper thresher had been assessed to him, and properly so, we think, as part of his personal property and included in the total valuation of his personal property but apparently not separately itemized. In the instant case the attempt was to collect delinquent personal taxes of Bessler for the years 1925 to 1931, inclusive. The Frigidaire in question was not in possession of, nor assessed or assessable to, Bessler for any one of those years. The taxes assessed against him for each of those years became liens upon all his personal property on January 1st of each succeeding year, all of such taxes thus becoming liens upon all personal property of Bessler prior to his acquisition of the Frigidaire excepting only the tax for 1931. A distinction might be argued between the two cases on the ground that in the Massey-Harris Case the valuation of the conditionally vended property was properly included in the assessment of the tax sought to be enforced and that the state could not be compelled to collect the taxes piecemeal. See Jordan v. Baggett (1927) 37 Ga. App. 537, 140 S. E. 902. We do not believe, however, that any such attempted distinction would be sound in principle, and we believe the present case must stand or fall according to the validity of the doctrine promulgated both expressly and inferentially, by the Massey-Harris Case. As a matter of fact, by that case we applied to conditionally vended property in the possession of a delinquent tax debtor the same rule announced in the Minneapolis Threshing Machine Case as applicable to personalty subject to chattel mortgage in the hands

of a delinquent tax debtor. In so doing, we are now of the opinion that we erred. It is undoubtedly true that as between the parties the purpose and object of a transaction of conditional sale of personalty are the same as the purpose and object of a transaction whereby the property is sold outright and a chattel mortgage taken back to secure the unpaid portion of the purchase price. The intention common to both transactions is easier payment for the buyer and adequate security for the vendor, and so far as the substantive rights and equities of the parties are concerned a sale upon condition "is in its essence analogous to a transfer of title to the buyer and a mortgage back by the buyer to the seller in order to secure the price." Williston, Sales (2d Ed.) § 579. See, also, 36 Harv. Law Rev. 740; Bogert, Commentaries on Conditional Sales, Uniform Laws Annotated, vol. 2A, p. 10. We believe in the Massey-Harris Case we came too hastily to the conclusion that the essential analogy, so far as concerns the purpose to be accomplished between conditional sale and absolute sale subject to mortgage back, justified treatment of conditionally vended property in the same fashion as property subject to chattel mortgage when it came to a question of lien thereon for delinquent personal tax of the vendee or mortgagor in possession. While it is true that the objects of conditional sale and absolute sale with mortgage back are substantially identical, and while it is true that it is the theory of the Uniform Conditional Sales Act that the transactions give rise to very similar rights and duties as between the parties, it is equally true that the procedural machinery of the two transactions is different and that distinct and different results in some respects must flow from the adoption of one method rather than the other.

This state is committed to the view that a chattel mortgage is a lien only and passes no title. Rosenbaum v. Foss (1893) 4 S. D. 184, 56 N. W. 114 (reversed on other grounds, 7 S. D. 83, 63 N. W. 538) ; Jencks v. Murphy (1902) 15 S. D. 425, 89 N. W. 1121; N. W. Port Huron Co. v. Iverson (1908) 22 S. D. 314, 117 N. W. 372, 133 Am. St. Rep. 920. When the transaction is absolute sale and mortgage back, in contemplation of law the whole legal title and property right passes to the vendee, who, then, by the execution of the mortgage, creates a charge or lien thereon. If it be held (as was established by this court in the Minneapolis

Threshing Machine Case twenty years ago, from which we are not now inclined, to depart) that the lien of the state for taxes under section 6759, R. C. 1919, is paramount to the lien of the mortgage previously given by the vendee, there is no difficulty as to what in the hands of the vendee is susceptible to such tax lien. It is merely a question of priority between liens. The whole legal title, property, and ownership of the chattel is in the vendee subject to the lien of the mortgage given by him and subject to the tax lien created by statute. It being determined as a matter of law that the tax lien is paramount, it attaches to what the vendee has, to wit,, the whole title, property, and ownership of the chattel, and is enforceable accordingly.

██ In the case of conditional sale, however, the situation is quite different. It is not a case where complete title, property, and ownership pass to the vendee and he creates a lien thereon. Legal title never passes out of the vendor until performance of the contract. It is specifically retained by him for security purposes, and his right so to do was recognized by this state by the enactment of the Uniform Conditional Sales Act (chapter 137, Laws 1919), providing by section 4 that the reservation of property in the seller after possession of the goods is delivered to the buyer should be valid as to all persons excepting only as otherwise provided in the act. Conceding that by virtue of section 6759, R. C. 1919, all personal property owned by Bessler on January 1, 1931, or thereafter acquired was subject to a first lien in favor of the state for all delinquent personal property tax of Bessler, and conceding that on January 1, 1932, a lien likewise attached to all personal property of Bessler for his delinquent personal property tax of 1931, nevertheless such lien could not attach to property rights which had always belonged to appellant, with which appellant had never parted, and which Bessler did not then own and never had owned, although he might have a contract right to obtain them. Bessler did not have on January 1, 1932, or at any time prior to the attempted levy, legal title to or complete property rights in the Frigidaire in question. By virtue of conditional sale contract he undoubtedly had rights with reference to said Frigidaire in the nature of property rights. See Williston on Sales, § 326; Bogert, Commentaries, supra, p. 31. It may very well be true that Bessler could transfer or incumber his rights (such as they actually were)

and that the same could be reached by his creditors, and if apt procedure was provided by statute could be applied to his taxes; but we do not think that his rights were of such nature that they could be reached by distress and sale under the provisions of section 6775, R. C. 1919. That section, as pointed out in J. I. Case Threshing Machine Co. v. Bentson, supra, contemplates the seizure of personal property of or belonging to the delinquent tax debtor. Conceding that Bessler had a right in the Frigidaire in question in the nature of a property right, nevertheless it was not the entire property in the res, and was not, we think, the sort of property right susceptible of seizure and sale in the manner and method provided by section 6775. In other words, the Frigidaire in question was not, under the circumstances here appearing, "personal property of" Bessler within the meaning of such phrase as used in section 6775. The property right of appellant in the res was not subject to seizure and sale for Bessler's taxes, and section 6775 does not provide for or contemplate seizure and sale of such partial property right as Bessler actually had, as distinguished from the whole property in the res.

The property not being subject to such seizure and sale, it follows that the complaint herein stated a cause of action, and the order sustaining the demurrer thereto is reversed. So much of the holding in Massey-Harris Co. v. Lerum (1932) 60 S. D. 12, 242 N. W. 597, as conflicts with the views herein announced is expressly overruled.

ROBERTS, P. J., and POLLEY and RUDOLPH, JJ., concur. WARREN, J., concurs in the result.