[File No. 6655.]

GENERAL MOTORS ACCEPTANCE CORPORATION, a Corporation, Appellant, v. CLARA THOMPSON, Individually and as Administratrix of the Estate of C. T. Thompson, Deceased, and the First National Bank in Grand Forks, North Dakota, a Banking Corporation, Respondents.

(292 N. W. 85.)

Opinion filed May 11, 1940.

*Emanuel Sgutt,* for appellant.

102

*C. J. Murphy, T. A. Toner,* and *F. Kilgore,* for respondent First National Bank; *J. A. Alphson* and *T. B. Elton,* for respondent Thompson.

MORRIS, J. This is an appeal from a judgment entered after trial by the court without a jury. The court found in favor of the defendant for a dismissal of the plaintiff's cause of action.

The facts disclose that on November 10, 1937, C. T. Thompson was engaged in business as a dealer in automobiles under the trade name of Thompson Motor Sales at Northwood, North Dakota. On that date the Chevrolet Motor Division executed a bill of sale to the General Motors Acceptance Corporation, the plaintiff herein, covering four automobiles. One of these automobiles is the subject of this lawsuit. On the same date that the bill of sale was given, C. T. Thompson executed another instrument in favor of the plaintiff, covering the same four automobiles. This instrument is denominated a Trust Receipt and reads as follows:

"I (we) hereby acknowledge that said motor vehicles are the property of said General Motors Acceptance Corporation and agree to take and hold the same, at my (our) sole risk as to all loss or injury, for the purpose of storing said property; and I (we) hereby agree to keep said motor vehicles brand new and not to operate them for demonstrating or otherwise, except as may be necessary to drive said motor vehicles from freight depot or from receiving city to my (our) place of business with all due care at my (our) risk en route against all loss and damage to said motor vehicles, persons or property, and ex-

cept as I (we) may be allowed by you in a special case to use the same for demonstrating upon our compliance with the conditions expressed in your instructions to us, and to return said motor vehicles to said General Motors Acceptance Corporation or its order upon demand at any time and for any reason; and pay and discharge all taxes, encumbrances and claims relative thereto. I (we) hereby agree not to sell, loan, deliver, pledge, mortgage, or otherwise dispose of said motor vehicles to any other person until after payment of amounts shown on dealer's record of purchase and release of like identification number herewith. I (we) further agree that the deposit made by me (us), in connection with this transaction, may be applied for reimbursement for any expense and/or loss incurred by General Motors Acceptance Corporation, in the event of breach of this trust or repossession of said motor vehicles.

"It is further agreed that no one has authority to vary the terms of this trust receipt."

On the same sheet of paper, immediately above the trust receipt, appears the dealer's record of purchase and release in which the automobile in question is described. Opposite the description of the automobile appear the figures $580.38 in the column designated "Principal Due." Above the dealer's record of purchase and release is the bill of sale already referred to. Attached to the bottom of the trust receipt and separated from it by a line of perforations in the paper was a promissory note in favor of the plaintiff signed by Thompson for an amount equal to the principal due on the four automobiles, including the one involved in this case. This note has been detached. It is described in the record, but was not introduced in evidence.

The automobile which gives rise to this lawsuit was sold by Thompson on November 12, 1937. He received in payment therefor a check for $310 and $400 in cash. On the same day he made a deposit to his account in the Northwood State Bank of $710, being the same amount as that received for the automobile. On that day he made another deposit of $500. Also on the same day, he issued his check on the Northwood State Bank for $580.98, payable to the plaintiff. This amount represents the amount of principal due as shown by the dealer's record attached to the trust receipt plus sixty cents interest in accordance with the terms of his note. He mailed the check to the plaintiff.

While it was in transit, Mr. Thompson died. When the check was presented to the bank in due course, it was returned unpaid because of the death of the maker.

The defendant, Clara Thompson, was appointed administratrix of the estate of C. T. Thompson. She took possession of the bank account in the Northwood State Bank, and later transferred it to the First National Bank in Grand Forks, under the designation, Carl T. Thompson Estate. At the time of the transfer there was $520.99 on deposit, which was credited to the estate account in the Grand Forks bank. At the time of trial, there was approximately $774 in this account. The estate is insolvent. The assets are insufficient to pay creditors, expenses of administration, and the widow's exemptions.

It also appears that a corporation known as the General Motors Sales Corporation guaranteed the plaintiff against loss to the extent of 25% of the price of the automobile, as shown by the dealer's record of purchase and release, and that the plaintiff has received from this concern the sum of $145.09 under this guaranty, leaving a balance of $434.89. The General Motors Sales Corporation has filed a claim as creditor of the C. T. Thompson estate for the amount paid by it on the guaranty, which has been allowed as a general claim against the estate.

The plaintiff presented as a preferred claim against the estate the full amount of the unpaid check. It claimed preference upon the ground that the money received for the automobile by C. T. Thompson constituted a trust fund, and the claim based thereon is therefore entitled to priority of payment. The county court allowed this claim for $434.89, being the amount of the check less the amount which the plaintiff had received under its guaranty from the General Motors Sales Corporation.

The plaintiff brought this suit in the district court for the full amount of the check plus interest. It also asked that the money in the bank account of the estate be adjudged to be held in trust for the plaintiff up to the amount of the check and interest thereon. The defendant, Clara Thompson, individually, and as an administratrix, filed an amended answer with the permission of the court, denying that the automobile was held by C. T. Thompson in any trust capacity whatever, and alleging that the instrument, denominated a Trust Receipt, in fact constitutes a conditional sales contract. She contends that the

plaintiff is only a general creditor of the estate and is entitled to no preference.

Trust receipts have been used in connection with certain types of financial transactions for many years. Prior to the advent of automobile financing, trust receipts were used chiefly as a convenient method for financing importations of goods. The stream-lined form of trust receipt now used in connection with the financing of automobile dealers has found its way into the courts in a number of comparatively recent cases. In Blashfield's Cyclopedia of Automobile Law and Practice, § 4755, it is said that "the rule has been laid down that the only situation in which such a trust receipt can be properly used is one in which the title to property by way of security is conveyed to the creditor by the owner, who is not the person responsible for the satisfaction of the obligation which the property secures."

In this case we must consider the entire transaction and all of the contemporaneous instruments of which it is composed. These instruments are the bill of sale from the Chevrolet Motor Division to the plaintiff; the trust receipt, with its attached dealer's record of purchase and release; and the promissory note given by Thompson to the plaintiff.

The form of trust receipt used in this instance has been involved in litigation in other states where it has received various constructions with respect to the relationship created thereby. In Nebraska it was held that it did not evidence an absolute sale, mortgage, conditional sale, or lease, and that it established the relation of bailor and bailee. General Motors Acceptance Corp. v. Hupfer, 113 Neb. 228, 202 N. W. 627.

In General Motors Acceptance Corp. v. Berry, 86 N. H. 280, 167 A. 553, the transaction involving a trust receipt and note was held not to constitute a conditional sales contract, but was held to be a chattel mortgage.

In General Motors Acceptance Corp. v. Whiteley, 217 Iowa 998, 252 N. W. 779, a trust receipt transaction was held to constitute a conditional sale, and not a bailment. The supreme court of North Carolina arrived at the same conclusion in General Motors Acceptance Corp. v. Mayberry, 195 N. C. 508, 142 S. E. 767.

The federal courts have also considered the form of trust receipt used

by the General Motors Acceptance Corporation, but have declined to fix its status as between a bailment, chattel mortgage, or conditional sale. Houck v. General Motors Acceptance Corp. (D. C.) 44 F. (2d) 410, 16 Am. Bankr. Rep. (N. S.) 468. Re James (C. C. A. 2d) 30 F. (2d) 555, 13 Am. Bankr. Rep. (N. S.) 304. The latter case is cited by Jones on Chattel Mortgages, Bowers ed. § 33c, as authority for the statement that a trust receipt does not conform strictly to any other type of security, such as chattel mortgages, conditional sales, pledges, leases, consignments, bailments, and the like, although in it are prominent characteristics of more than one of these types.

Many of the cases involving trust receipts deal with the question of notice to subsequent purchasers and encumbrancers, as affected by the recording statutes of the various states. No such question is involved in this case. We are dealing with the original parties, or those in the position of original parties to the transaction.

In this case our decision does not require that we label the trust receipt as being any specific type of security. It is apparent, however, that the transaction, including its various instruments, is basically one of security. General Motors Acceptance Corp. v. Seattle Asso. of Credit Men, 190 Wash. 284, 67 P. (2d) 882.

The General Motors Acceptance Corporation became the owner of the automobile by virtue of the bill of sale from the General Motors Sales Corporation. Thompson gave his note to, and executed the trust receipt, in favor of the General Motors Acceptance Corporation. Under these instruments he became obligated to pay a fixed purchase price. He was entitled to possession of the automobile with certain restrictions as to its use, and with the specific restriction that he agreed to and in which he said: "I (we) hereby agree not to sell, loan, deliver, pledge, mortgage, or otherwise dispose of said motor vehicles to any other person until after payment of amounts shown on dealer's record of purchase and release of like identification number herewith."

He acknowledged that the automobile in question was the property of the General Motors Acceptance Corporation. Thus the title was retained by the plaintiff until the automobile was paid for. The record contains nothing to indicate that the provisions of the trust receipt were in any way waived or modified.

Thompson sold the automobile and sent the plaintiff his check for the

amount which he owed.  The fact that he sent his check indicates that he, in good faith, intended to remit the amount due the plaintiff. Nevertheless, the sale of the automobile before he had paid the General Motors Acceptance Corporation was a violation of the provisions of the trust receipt, for it is plainly stated therein that he should not sell the automobiles until he paid for them.

Thompson had the money in the bank to meet the check.  Had he lived, it would, undoubtedly, have been paid in due course.  His death made it necessary for the bank to refuse payment when the check was presented.  The determination of this controversy depends upon the relationship that developed between Thompson and the plaintiff with regard to the money that he collected for the automobile and deposited in the bank.  If this relationship were that of debtor and creditor, then the plaintiff would be merely a general creditor of the Thompson estate, and entitled to no preference.  On the other hand, if a fiduciary relationship existed between Thompson and the plaintiff, a different situation becomes manifest.

If Thompson had been given the right to sell the automobile before paying for it, the relation of debtor and creditor might have existed after the sale, but the sale being in violation of the provisions of the trust receipt created something more than the simple relationship of debtor and creditor.  The title to the automobile was in the plaintiff. When Thompson sold it without authority, the title to the money that he collected was held by him in a fiduciary capacity.  He owed the duty to the plaintiff to turn the money over to it, not as a debtor, but as one who, in violation of his agreement, had sold property, the title to which was in the plaintiff and in which the plaintiff had a definite valuable interest.  Such a situation gives rise to a quasi trust, which entitles the plaintiff to claim the proceeds of the sale of the car to the extent of its interest therein, if the proceeds can be followed and identified.

"While the simple relation of debtor and creditor is not sufficient grounds for invoking the doctrine, the general rule or doctrine permitting trust property to be followed and recovered in equity applies not only to all forms and types of trusts, but is applicable in all cases of a fiduciary relationship or quasi trust."  65 C. J. 966, 967.

Thompson sold the automobile covered by the trust receipt and

deposited the proceeds in the Northwood State Bank. The proceeds passed into the hands of his legal representative and is now on deposit in the bank account of his estate. In Perry on Trusts and Trustees, 7th ed. § 247a, it is said, "If one sells the property of another and deposits the money in bank in his own name, upon notice to the bank, by the owner of the property, of the facts, and a demand for the money, the bank becomes a quasi or constructive trustee for the true owner."

The money collected by Thompson and now in the hands of the First National Bank of Grand Forks, in the account of the Thompson Estate, comes within the above doctrine, and to the extent of the amount of $434.89 still due to the plaintiff upon the sale price of the automobile as set forth in the trust agreement, and the dealer's record of purchase and release is subject to a preferred claim of the plaintiff. The district court erred in dismissing the plaintiff's action. The judgment appealed from is reversed and the case is remanded for entry of judgment consistent with this opinion.

NUESSLE, Ch. J., and CHRISTIANSON, BURR, and BURKE, JJ., concur.