WALTON, Respondent, v. COMMERCIAL CREDIT
COMPANY, et al, Appellants

(299 N. W. 300.)

(File No. 8391. Opinion filed July 17, 1941.)
Rehearing Denied September 9, 1941.

**Cherry & Braithwaite,** of Sioux Falls, and **Dwight Campbell,** of Aberdeen, for Appellants.

**Max Stokes,** of Aberdeen, for Respondent.

WARREN, J.   This action was instituted by Byron A. Walton, trustee in bankruptcy of Aberdeen Storage Battery Company, Inc., a corporation, bankrupt, for the alleged conversion of 48 washing machines and one Blue Flash Cooler of the value of $2,356.85 by the Commercial Credit Company, a corporation, and P. L. Conlan, and for damages.   From an adverse judgment awarding plaintiff the full amount of the alleged conversion, $2,356.85 and costs, the defendants appeal.

During the course of its business operations the bankrupt accumulated obligations in the amount of $21,518 and had assets exclusive of the property involved in this action of about $10,000 on the eve of its bankruptcy.   The petition in involuntary bankruptcy was filed November 4, 1938, by the creditors of the bankrupt.   October 27, 1938, eight days prior to the filing of the petition, the appellants repossessed, with full knowledge and consent of parties in possession of the goods, the articles which are the subject of this controversy under the terms of contracts signed and executed by the parties entitled "Trust Receipts" which reserved the title in the Commercial Credit Company and gave it the right to repossess on demand the machines in the custody of the Aberdeen Storage Battery Company which had not been paid for.   These trust receipts were never filed of record.

Among numerous assignments of error the appellants strenuously urge two main propositions: (1) The contracts involved are trust receipts reserving title in appellant and do not need to be filed of record, and (2) they are therefore valid contracts between the parties and may be enforced according to their terms to the exclusion of the creditors.

■ Respondent maintains that the trial judge committed error in allowing the contracts called trust receipts to be entered in evidence under a general denial. It is our opinion that the contracts were admissible under a general denial because under a general denial in an action for conversion the defendant not only denies the conversion, but the plaintiff's title, and in order to prove there is no title in plaintiff he may enter evidence to show title in himself. Bowers on Conversion, Sec. 532, p. 388; McClelland v. Nichols, 24 Minn. 176; Hart v. Hart, 48 Mich. 175, 12 N. W. 33; Robinson v. Frost, 14 Barb., N. Y., 536; Blakey v. Douglas, 3 Sadler, Pa., 495, 6 A. 398.

The contracts and delivery of the articles, according to the evidence, were carried out in the following manner: The Aberdeen Storage Battery Company ordered a carload of washing machines from the manufacturer. The company financed the purchase on what is commonly called the "floor plan" through the Commercial Credit Company. The company, through its president, would advance ten per cent of the purchase price and other charges to the Commercial Credit Company and sign trust receipts and promissory notes corresponding to the trust receipts running to the Commercial Credit Company. The Credit Company would then send these trust receipts into the manufacturer to enable it to fill in a description of the property. The Credit Company then paid the full purchase price to the manufacturer and received a bill of sale from it. The machines were then shipped to the Aberdeen Storage Battery Company and placed on display for sale by it.

The trial court in the present case held that the purported trust receipts were in fact chattel mortgages and under the chattel mortgage recording statute, Section 1583, R. C. 1919, now SDC 39.0408, they must be recorded and if they are not so recorded they are void as to all creditors. Hollenbeck v. Louden, 35 S. D. 320, 152 N. W. 116; Pierson v. Hickey, 16 S. D. 46, 91 N. W. 339.

■ We believe, however, such holding to be in error as not consonant with the facts of this case. In the case

of a chattel mortgage the security holder must derive his security title from the one responsible for the satisfaction of the obligation which the property secures. In re James, Inc., 2 Cir., 30 F.2d 555. The recording acts with respect to creditors under such circumstances are very strict and the reasons are apparent.

"* * * The appearance of continued unencumbered ownership of property formerly held free and clear and still in his possession tends to give a false basis for dealings and for credit if secret liens can be asserted against it. The mortgagor, as the historic borrower at the mercy of the lender, needs the protection against sacrifice of his interest in summary foreclosure. Reasons in favor of chattel mortgage recording acts as applied to the ordinary loan transaction are therefore strong reasons." 15 Cornell L. Q. 543, 559.

Our court in General Motors Acceptance Corporation v. Whitfield, 62 S. D. 415, 420, 253 N. W. 450, 452, speaking of legal title in cases of conditional sales, said: "In the case of conditional sale * * * Legal title never passes out of the vendor until performance of the contract. It is specifically retained by him for security purposes, and his right so to do was recognized by this state by the enactment of the Uniform Conditional Sales Act (chapter 137, Laws 1919), providing by section 4 that the reservation of property in the seller after possession of the goods is delivered to the buyer should be valid as to all persons excepting only as otherwise provided in the act."

The Supreme Court of North Dakota in General Motors Acceptance Corporation v. Thompson, N. D., 292 N. W. 85, 87, sheds light upon trust receipts and their use as follows: "The stream-lined form of trust receipts now used in connection with the financing of automobile dealers has found its way into the courts in a number of comparatively recent cases. In 7 Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., § 4755, it is said that: 'The rule has been laid down that the only situation in which such a trust receipt can be properly used is one in which the title to property by way of security is conveyed to the creditor by

the owner, who is not the person responsible for the satisfaction of the obligation which the property secures'."

It will be seen from the facts as set out above that the security holder in the case at bar did not derive his security title from the one responsible for the satisfaction of the obligation which the property secures, but on the contrary the security holder derived his security title from the manufacturer and the one responsible for the satisfaction of the obligation which the property secures received only the possession of the goods from the manufacturer with the right to display and sell the goods only by reason of and strictly subject to the terms of the contract signed between bankrupt and the party who paid for the property, the Commercial Credit Company. The facts of the case at bar then fall under the classification of a trust receipt transaction as defined by the leading authorities and cases on the subject. General Motors Acceptance Corporation v. Thompson, N. D., 292 N. W. 85; L. Vold, 15 Cornell L. Q. 553; Karl T. Frederick, 22 Columbia L. R. 395, 546; In re James, Inc., supra; General Motors Acceptance Corporation v. Kline, 9 Cir., 78 F. 2d 618; In re Bell Motor Company, 8 Cir., 45 F. 2d 19; General Motors Acceptance Corporation v. Hupfer, 113 Neb. 228, 202 N. W. 627; In re Otto-Johnson Merc. Co., D.C. N.M., 52 F.2d 678; Hamilton Nat. Bank v. McCallum, 6 Cir., 58 F.2d 912; In re Marks & Co., 2 Cir., 222 F. 52; Houck v. General Motors Acceptance Corporation, D.C. Pa., 54 F.2d 410; Charavay & Bodvin v. York Silk Mfg. Co., C.C.N.Y. 170 F. 819; Century Throwing Co. v. Muller et al. 3 Cir., 197 F. 252; Chichester v. Commercial Credit Co., 37 Cal. App.2d 439, 99 P.2d 1083.

This court, in the case of Iowa Guarantee Mortgage Corp. v. General Motors Acceptance Corporation, 62 S. D. 18, 250 N. W. 669, has recognized the fact that trust receipt contracts are valid contracts and enforcible between the parties. The only question that remains then is whether trust receipts are required to be filed to be valid as against creditors of the possessor of the articles.

■ As has been pointed out above the trust receipts

are not chattel mortgages and therefore cannot be invalid because they are not filed under the chattel mortgage recording act. The trust receipt transaction in its historic aspects and fundamental theory more nearly falls under the category of a conditional sale than a chattel mortgage because it is the reservation of title in the transfer of goods as security for payment for them by the purchaser, whereas a chattel mortgage involves the transfer of title by the owner of goods as security for a loan made to the owner and the legislature has recognized that the necessity for the strict protection to creditors given in chattel mortgages does not exist in the case of a conditional sale and so has required creditors to have a lien by attachment on the goods subject to a conditional sale before they can prevail over the conditional seller who has not filed his conditional sales contract of record. SDC 54.0205. The legislature has also recognized by passing conditional sales recording acts that there are different kinds of sales transactions which are distinct in themselves and require their own special rules to govern them.

There being no provision in the laws of South Dakota requiring the recording and filing of trust receipts, the trust receipts were valid between the parties and against these creditors even though they were not filed of record.

The complaint in the case at bar being solely for the conversion of the goods in question and conversion by defendant not having been proved, other matters argued but not pleaded are not before the court.

As the judgment now stands it is reversed.

All the Judges concur.