PUERTO RICO AUTO CORPORATION, peticionaria *v.* TRIBUNAL DE CONTRIBUCIONES DE PUERTO RICO, recurrido.

Número 293.

*Sometido:* 26 de enero de 1953.    *Resuelto:* 17 de septiembre de 1954.

*Vicente M. Ydrach,* abogado de la peticionaria; *Hon. Secretario de Justicia Interino, J. B. Fernández Badillo;* y *J. C. Santiago Matos, Procurador Auxiliar,* abogados del interventor, querellado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

Los hechos jurídicos sobre los cuales debe descansar nuestra decisión en el presente caso, son los siguientes: la Puerto Rico Auto Corporation era, durante los años de la imposición de la contribución en controversia, la distribuidora exclusiva para el territorio de Puerto Rico, de ciertos automóviles fabricados en los Estados Unidos de América. Para comprar dichos vehículos del fabricante, la Puerto Rico Auto Corporation enviaba su orden de compra al fabricante, y solicitaba del Banco Popular de Puerto Rico, que le estableciera un crédito en la ciudad de Nueva York, por una cantidad igual al costo total de su orden de compra. Con este crédito se pagaba al fabricante por la mercadería ordenada por la Puerto Rico Auto Corportaion. El fabricante preparaba los correspondientes documentos de embarque para transportar la mercadería vendida a Puerto Rico. Los conocimientos de embarque a la orden, (*order bill of lading*), eran entregados en Nueva York al representante del Banco Popular de Puerto Rico, quien los enviaba directamente al banco.

Al llegar la mercadería a Puerto Rico, el Banco Popular de Puerto Rico le notificaba dicho arribo a la Puerto Rico Auto Corporation. Para levantar dicha mercadería del muelle, la Puerto Rico Auto Corporation firmaba un pagaré a presentación a favor del banco, por el montante del precio de compra de cada automóvil, y un resguardo de fideicomiso, (*trust receipt*), para garantizar el montante del precio de compra de cada automóvil, redactado en la siguiente forma:

"RECIBO DE FIDEICOMISO: Para obtener un préstamo. En consideración a la suma de $........dólares que nos ha sido prestada en esta fecha por el Banco Popular de Puerto Rico, hemos separado como propiedad de dicho banco, los siguientes bienes y mercaderías:...................................
...................................................................
...................................................................
...................................................................
y en consideración a dicho préstamo, convenimos aquí mante-

ner dicha mercadería en fideicomiso por cuenta del Banco Popular de Puerto Rico, como propiedad suya, quedando en libertad de vender la misma por cuenta de dicho banco, pero sin facultad para disponer de dichos bienes o disponer de sus réditos, bien sea a través de una venta condicional, prenda o en cualquiera otra forma, quedando asimismo acordado, que en caso de venta, entregaremos los réditos de dicha venta al Banco Popular de Puerto Rico, tan pronto se realice dicha venta, para ser abonado al préstamo de $........extendido a nosotros por el Banco Popular de Puerto Rico, o a cualesquiera otra deuda u obligación que tengamos contraída con dicho banco.

Hemos acordado tener dichos bienes asegurados por su valor total contra incendio, pagadero el seguro en caso de incendio, al Banco Popular de Puerto Rico; quedando asimismo entendido, que serán por cuenta nuestra los gastos de almacenaje, primas de seguro y cualesquier otros gastos relacionados con dichos bienes. Convenimos asimismo que ningun incumplimiento u omisión de nuestra parte de cumplir con cualquiera de las obligaciones de éste, o de cualquier otro recibo de resguardo similar, o de cualquier acuerdo nuestro con el referido Banco Popular de Puerto Rico, que es el banco que ha concedido el préstamo por $........, no se considerará como una renuncia por dicho banco de sus derechos o acciones bajo cualesquier de los documentos aludidos, a menos que dicha renuncia sea por escrito, y esté debidamente refrendada y firmada por dicho banco. El Banco Popular de Puerto Rico puede en cualquier momento cancelar este fideicomiso y tomar posesión de los bienes, o de los réditos de los mismos si hubieran sido vendidos, dondequiera que se encuentren dichos bienes o réditos. La intención de este acuerdo es proteger y conservar fuera de controversia, el título del Banco Popular de Puerto Rico sobre la mercadería dada en fideicomiso, o sus réditos en el caso correspondiente.''

Después de haber firmado dichos documentos, el Banco Popular de Puerto Rico le entregaba el conocimiento de embarque a la Puerto Rico Auto Corporation, quien presentaba dicho conocimiento de embarque a la compañía de vapores y ésta le entregaba los automóviles remitidos por el fabricante. Cuando la Puerto Rico Auto Corporation vendía los automóviles en Puerto Rico, le entregaba al banco el importe del

pagaré, y el banco le devolvía el pagaré y el resguardo fiduciario correspondientes.

Algunos automóviles traídos a Puerto Rico, mediante la operación que acabamos de reseñar, se encontraban en los muelles de San Juan al 15 de enero de 1949, y el anterior Tesorero de Puerto Rico los consideró como propiedad de la Puerto Rico Auto Corporation y le impuso la correspondiente contribución sobre la propiedad por el año fiscal 1949-1950. La peticionaria acudió al anterior Tribunal de Contribuciones de Puerto Rico, solicitando entre otras cosas, ·la eliminación de la partida de automóviles sobre los muelles, alegando, que dichos vehículos no eran propiedad de la Porto Rico Auto Corporation al 15 de enero de 1949, ni estaban en posesión de la Porto Rico Auto Corporation a esa fecha.

El anterior Tribunal de Contribuciones de Puerto Rico, por voz de su ilustrado Juez señor Romero, declaró sin lugar la eliminación solicitada, así como la reconsideración también solicitada, concurriendo con la resolución denegando la reconsideración el ilustrado Juez señor Polo. Al acudir ante nos, la peticionaria Puerto Rico Auto Corporation señala dos errores: 1.—"que el Tribunal de Contribuciones de Puerto Rico erró al no concluir que los vehículos que se hallaban en los muelles de San Juan al 15 ·de enero de 1949 y que a dicha fecha no habían sido levantados por la Puerto Rico Auto Corp., *no eran propiedad* de dicha Puerto Rico Auto Corporation" y 2.—"que el Tribunal de Contribuciones de Puerto Rico erró al no aplicar a este caso la ley establecida por ese tribunal en el caso titulado Puerto Rico Auto Corporation, demandante, v. Tesorero de P. R., demandado, caso núm. 3 D.T.C. 524, en cuyo caso resolvió que los vehículos que se hallaban en los muelles cubiertos por "trust receipts" no eran propiedad de Puerto Rico Auto Corporation ni estaban en posesión de dicha Puerto Rico Auto Corporation."

El resguardo de fideicomiso (*trust receipt*), resulta una institución híbrida dentro de la ciencia razonada del derecho. Por más de sesenta años, la jurisprudencia ha

estado luchando por situar, dentro de los conceptos tradicionales del derecho, esta garantía flexible y elusiva, que se pasea entre los principios enunciativos de la teoría y las estructuras formales de lo jurídico, con una gran displicencia, creando curiosidad a veces, resentimiento otras, sin más lógica que la lógica del tiempo que la produce. Los Jueces nos hemos acostumbrado a bregar con ella, como con uno de esos complejos que crea la sociedad económica moderna, que hay que estudiarla mejor por sus efectos sobre personas y cosas, que por su razonabilidad dentro de la ciencia del derecho. Gracias al paciente, y a veces fecundo, esfuerzo de los juristas, sabemos hoy lo que no es el resguardo de fideicomiso, que siempre constituye una manera de saber algo.

El resguardo de fideicomiso no es, una consignación clásica para fines de venta, (*consignment for sale*), porque el distribuidor o importador resulta deudor de la cosa consignada, como cualquier comprador corriente. El resguardo de fideicomiso no es un fideicomiso, (*technical trust*), propiamente dicho, porque, dentro de la operación normal del negocio jurídico, el fiduciario puede disponer de la cosa dada en fideicomiso, para beneficio propio, y no tiene obligación de pasarla a ningún fideicomisario ni reintegrarla al fideicomitente. El resguardo de fideicomiso no es una prenda, (*pledge*), porque la posesión se encuentra en el deudor y no en el acreedor, y además, el acreedor resultaría ser dueño de la cosa que se le diera en prenda. El resguardo de fideicomiso no es un depósito, (*bailment*), (*depositum*), porque el depositario no tiene obligación de restituir la cosa depositada, y además, puede disponer de ella libremente. El resguardo de fideicomiso no es una agencia (*limited agency*) porque el deudor vende a nombre propio y con su venta no obliga a su principal. El resguardo de fideicomiso no es una hipoteca de bienes muebles, (*chattel mortgage*), porque el acreedor resulta ser dueño de la cosa hipotecada. El resguardo de fideicomiso no es una venta condicional, (*conditional sale*), porque el acreedor puede reposeer los bienes

antes del incumplimiento de las condiciones del contrato, cosa que no podría hacer el vendedor condicional típico. El resguardo de fideicomiso no es un título de propiedad sobre la cosa, (*ownership*), porque la cosa se compra para otro, para ser entregada a ese otro, que contrae la obligación de pagar el precio de compra mediante un préstamo, que reconoce el deudor haber recibido en el mismo resguardo. El resguardo de fideicomiso no es un derecho de posesión, como algo que fuera distinto al derecho de propiedad, porque la posesión como hecho, no puede reconocerse en dos personas distintas; y como título, resulta suficiente la mera posesión de la cosa mueble.

Hemos examinado con extremado celo las disposiciones de la Ley núm. 41 de 23 de abril de 1928 (pág. 295), conocida como "Ley para Proveer la Constitución de Fideicomisos y para otros fines", según quedó enmendada por la Ley núm. 211 de 8 de mayo de 1952 ((1) pág. 505), incorporada la original, a la edición del 1930 del Código Civil de Puerto Rico, arts. 834 a 874; los arts. 1762 al 1772 del Código Civil de Puerto Rico, referentes a la prenda; los arts. 1658 a 1684 del Código Civil de Puerto Rico, referentes al depósito; el art. 1211 del Código Civil de Puerto Rico referente a la facultad de contratar a nombre de otro; los arts. 162 a 198 de la ed. del 1932 del Código de Comercio de Puerto Rico, referentes a la comisión mercantil; la Ley núm. 19 de 2 de junio de 1927 (pág. 491) "Para Autorizar la Hipoteca de Propiedad Mueble y disponer el Registro de las Hipotecas así constituídas en un Registro Especial y para otros fines"; los arts. 2 y 3 de la Ley núm. 61 de 13 de abril de 1916 (pág. 126), y el art. 6 de la misma, según quedó enmendado por la Ley núm. 40 de 27 de junio de 1925 (pág. 247), referente a ventas condicionales; los arts. 1334 y siguientes del Código Civil de Puerto Rico referentes a la compraventa, especialmente el art. 1339, y los arts. 360 a 395 del Código Civil de Puerto Rico, referentes a la posesión, y nos encontramos que de

acuerdo con nuestra legislación local, el conflicto del resguardo de fideicomiso con nuestro propio derecho, sería el mismo.

Sin embargo, justo es reconocer, que el resguardo de fideicomiso participa de algunas de las características, tanto de la consignación clásica para fines de venta, como del fideicomiso, como de la prenda, como del depósito, como de la agencia; es algo parecido a una hipoteca de bienes muebles, aunque con algunos elementos de la venta condicional; es un poco un título de propiedad y un poco menos un título de posesión. Estamos pues frente a una especie de fideicomiso técnico, acoplado a una agencia limitada, principalmente diseñado para servir como garantía a un precio de venta: 49 A.L.R. 285, sec. II *b;* 87 A.L.R. 305, sec. II *b;* 101 A.L.R. 454, sec. II *b;* 168 A.L.R. 36, sec. II *b.*

El examen de estas cuatro anotaciones demuestra que hasta el 1924, la jurisprudencia norteamericana había mantenido con bastante uniformidad que el tenedor de un resguardo de fideicomiso, o sea, el banco o la compañía de crédito que había adelantado el dinero para la compra de los bienes ordenados por el distribuidor, era el verdadero dueño de la cosa comprada, pues mantenía sobre ella, una especie de título de garantía (*security title*). Después del 1924, los tribunales se dividieron manteniendo uno que el título de propiedad estaba en el tenedor del resguardo de fideicomiso y otro que estaba en el distribuidor: 87 A.L.R. 309, sec. III. Esta diversidad de criterios se prolonga, en algunos estados hasta el 1933, fecha en que se adopta la Ley Uniforme de Resguardos de Fideicomiso, (*Uniform Trust Receipts Act*), donde se le reconoce al banco o la compañía de crédito (*entruster*) un título de garantía (*security interest*) y al importador o distribuidor, un derecho de propiedad sujeto al pago del interés garantizado.

La jurisprudencia tuvo que enfrentarse con tres objeciones, sumamente graves, para poder convalidar el funcionamiento del resguardo de fideicomiso. La primera objeción

fué, que los fideicomisos no pueden ser secretos. Como cuestión de hecho, casi todos los estados tienen a las compañías de fideicomisos y al negocio de fideicomisos fuertemente reglamentados. Como cuestión de ley, en casi todas las legislaciones estaduales, existe una disposición parecida a la disposición del art. 11 de nuestra Ley núm. 41 de 23 de abril de 1928, incorporada a nuestro Código Civil, (art. 844), que establece: "se prohiben los fideicomisos secretos". La segunda objeción fué, que no podía afectar el derecho de los compradores de buena fe, (*buyers in due course*), cualquier arreglo fiduciario que existiera entre el acreedor fiduciario y el vendedor con autoridad presumible, (*indicia of ownership*), para vender el artículo en mercado abierto. La tercera objeción fué, que no podía afectar el derecho de los otros acreedores, cualesquiera gravámenes de la propiedad mueble del deudor, no inscritos en un registro público. Para afrontar esta situación fué que se adoptó por algunos estados la Ley Uniforme de Resguardos de Fideicomiso, (*Uniform Trust Receipts Act*), 9A Uniform Laws Annotated 285, (ed. de Edward Thompson Company), (1951). Sin embargo, frente a la reserva fiduciaria, el balance de la jurisprudencia es a favor de los compradores de buena fe y en contra de los acreedores del importador o distribuidor.

En aquellos estados donde no se ha adoptado la Ley Uniforme de Resguardos de Fideicomisos, como es el caso de Puerto Rico, el resguardo de fideicomiso sigue siendo válido entre el banco acreedor y su deudor por el precio de compra, bien se le considere como préstamo o anticipo sobre el precio de compra, fideicomiso técnico o agencia limitada, pero no tiene efecto contra los compradores de buena fe de la mercadería en poder del deudor, aunque constituye una preferencia contra los acreedores comunes del deudor cuando no hay conflicto con la ley local referente a la inscripción en un registro público de los gravámenes sobre bienes muebles. Este último aspecto es el más conflictivo, pues no sólo entra en juego, la diversidad de las disposiciones estatutarias, sino la

variedad de los hechos del caso. Felizmente no tenemos que pasar sobre ninguno de estos dos extremos para resolver este caso.

La evidente disparidad de la jurisprudencia norteamericana sobre el verdadero carácter de la transacción envuelta, ha servido, sin embargo, para establecer dos criterios más racionales y mejor sistematizados: (1) que aunque el resguardo de fideicomiso tiene elementos de los otros contratos o actos jurídicos, de que ya hemos hablado, debe ser considerado como una institución de derecho distinta, capaz de coleccionar en torno suyo, ciertos principios de las otras instituciones de derecho, pero conservando su autonomía como una institución impuesta por las nuevas necesidades de la economía mercantil (¿usos y costumbres de plaza?) ; (2) que aunque se trata de una institución de derecho consuetudinario, integrada como un cuerpo jurídico distinto, cada uno de sus elementos puede aislarse, o pueden agruparse todos, según lo requiera la justicia del caso, (*to look at the substance rather than the form*), 87 A.L.R. 303, 305, para determinar sus efectos jurídicos con relación, tanto a las personas envueltas en el contrato, como a terceras personas, o a los diversos actos comprendidos en cada momento de su perfeccionamiento o consumación. De modo y manera, que la nueva institución puede considerarse en su totalidad para descubrir su verdadera naturaleza como garantía, considerándose conjuntamente la orden de compra, la carta de crédito, el conocimiento de embarque, el pagaré firmado por el importador o distribuidor a favor del banco y el propio resguardo de fideicomiso, o pueden aislarse sus distintos elementos para demostrar, en un momento preciso, su relación con los principios del fideicomiso técnico (*technical trust*), de la prenda, del depósito, de la agencia, de la hipoteca de bienes muebles y de la venta condicional, y para determinar en cuanto a la situación peculiar de las partes envueltas, la posible división de los derechos de propiedad o de posesión entre ellas. *In re James, Inc.* 30 F.2d 555; (*Manton*), (1929), cita precisa

a las págs. 557 y 557, (diferencia entre el resguardo de fideicomiso y la prenda, la hipoteca de bienes muebles y la venta condicional); *T.D. Dowing Co.* v. *Shawnut Corporation*, 139 N.E. 525, *(Rugg)*, (1923), cita precisa a la pág. 526, (con relación a la posible relación de agencia entre el importador y el banco financiador); *Commercial Discount Co.* v. *Los Angeles County*, 105 P. 2d 115, *(Shenk)*, (1940), cita precisa a la pág. 117, (el recibo de fideicomiso no es una hipoteca de bienes muebles); *Walton* v. *Commercial Credit Co.* 299 N.W. 300 *(Warren)*, (1941), cita precisa a la pág. 302, (el recibo de fideicomiso es más parecido a una venta condicional que a una hipoteca de bienes muebles); *C.I.T. Corporation* v. *Commercial Bank of Patterson* 149 P.2d 439, *(Ward)*, (1944), cita precisa a la pág. 444 (la posesión por sí sola, no es suficiente para una transacción con resguardo de fideicomiso); *General Motors Acceptance Corporation* v. *Thompon* 292 N.W. 85 *(Morris)*, (1940), cita precisa a la pág. 87 ("un resguardo de fideicomiso no se ajusta estrictamente a ninguna otra clase de garantía, tales como la hipoteca de bienes muebles, la venta condicional, la prenda, los arrendamientos, las consignaciones, los depósitos *(bailments)* y otros parecidos, a pesar de que en él haya modalidades prominentes de más de uno de esos tipos); *General Motors Acceptance Corp.* v. *Seattle Ass'n Etc.*, 67 P.2d 882 *(Main)*, (1937), cita precisa a la pág. 885, (sobre el carácter de garantía del resguardo de fideicomiso; a la pág. 884 se establece que los gravámenes secretos perjudiciales a los acreedores generales no son favorecidos por la ley); *Klett* v. *Security Acceptance Co. et. al.* 242 P.2d 873 *(Schauer)*, (1952), cita precisa a la pág. 882 ("el resguardo de fideicomiso es un método para garantizar una deuda y no un método para crearla'); en cuanto al carácter del recibo de fideicomiso como una garantía, véase "El Recibo de Fideicomiso como una garantía, —Karl T. Frederick—XXII Col. L. Rev. 395 (1922); El Recibo de Fideicomiso—John Hanna—XXIX Col. L. Rev. 545; 2 *Fraudulent Conveyances*

*and Preferences* 958—Garrard Glenn—Ed. de Baker Voorhis & Co.), (1940).

Tanto la Ley Uniforme de Resguardos de Fideicomiso como la glosa de las revistas jurídicas antes y a continuación citadas, han llegado a la conclusión que, en realidad de derecho, lo que se produce en la operación del resguardo de fideicomiso es una distribución o división del derecho de propiedad de la cosa comprada.

Sobre este último aspecto, en cuanto a la división del derecho de propiedad entre el banco financiador y el distribuidor financiado, es notable el trabajo del sabio profesor de la Universidad de Nebraska, L. Vold, titulado: "La Garantía del Resguardo de Fideicomiso en el Financiamiento de Ventas"—15 Cornell L. Q. 543, (Ed. de la Universidad de Cornell), (1930). Empieza el profesor Vold por establecer las cuatro etapas sucesivas que tiene la transacción ortodoxa tripartita del resguardo de fideicomiso: (1) la etapa preliminar, que podría llamarse la etapa de gestión de compra y crédito, durante la cual el distribuidor hace gestiones cerca del fabricante para comprar los artículos que interesa e investiga bajo qué condiciones puede el banco darle dinero; (2) la segunda etapa, que podría llamarse la etapa de la extensión de crédito, durante la cual el distribuidor obtiene del banco la extensión de un crédito a su favor; generalmente en el negocio de importación, esto se hace bajo la expedición de una carta de crédito por el banco, a favor del fabricante o de sus corresponsales bancarios, prometiendo pagar los giros librados por el precio de los artículos ordenados por el distribuidor, cuyos giros debe acompañar el fabricante con los correspondientes conocimientos de embarque, extendidos bien a la orden del banco, o a la orden del embarcador (*shipper*) debidamente endosados por dicho embarcador al banco; (3) la tercera etapa, que podría llamarse la etapa del embarque bajo contrato, durante la cual el fabricante ha embarcado los artículos pedidos por el distribuidor de acuerdo con los términos de la extensión de crédito obtenida, girando al mismo

tiempo por el precio al banco financiador, o al distribuidor, según sea el caso, y acompaña dichos giros con un conocimiento de embarque a la orden, (*order bill of lading*), como garantía colateral, para ser presentados a su cobro de acuerdo con la práctica bancaria; (4) la cuarta etapa, que podría llamarse la etapa del pago por el banco mediante el endoso del conocimiento de embarque a la orden, durante la cual el banco paga los giros del fabricante, tomando como garantía el conocimiento de embarque a la orden; generalmente, en el negocio de importación, lo que hace el fabricante es girar contra el corresponsal extranjero del banco, de acuerdo con los términos de la carta de crédito, recogiendo dicho corresponsal los conocimientos de embarque, a cambio del pago de los giros y remitiéndolos directamente al banco. Lo más importante de todo lo que sucede durante esta etapa, es, que el banco, al anticipar el dinero del precio de compra, retiene el control sobre el conocimiento de embarque a la orden, hasta que obtiene el resguardo de fideicomiso del distribuidor.

La conclusión del profesor Vold es, que durante la primera etapa, los derechos de propiedad y de posesión tanto del banco como del distribuidor están indeterminados; durante la segunda etapa, el distribuidor tiene un derecho de propiedad potencial, (*beneficial ownership*) y el banco un derecho de retención del artículo comprado para fines de garantía, hasta donde alcance el precio de compra; durante la tercera etapa, la posesión la tiene el naviero, el derecho de retención del artículo comprado para fines de garantía la mantiene el banco, y la propiedad potencial la mantiene el distribuidor; durante la cuarta etapa, el distribuidor mantiene su derecho de propiedad potencial (*beneficial ownership* o *beneficial interest*), y el banco, tiene el derecho de retención del artículo comprado para fines de garantía y la posesión del artículo comprado, hasta tanto el distribuidor firme un pagaré por el montante del precio de compra y un resguardo de fideicomiso; cuando el banco le endosa al distribuidor el

conocimiento de embarque, el distribuidor adquiere la posesión, (¿posesión a nombre de otro?) además del derecho de propiedad reconocible que ha retenido desde el primer momento.

De todo esto, lo importante para los hechos de este caso, es que desde la segunda etapa, el distribuidor, tiene un derecho de propiedad potencial sobre el artículo comprado, máxime en una jurisdicción como Puerto Rico, donde la compraventa se perfecciona, tan pronto el comprador y el vendedor se ponen de acuerdo sobre la cosa y el precio de la misma, aunque no se haya entregado ni la cosa ni el precio.

Después de estudiar detenidamente la legislación local que resulta aplicable a la operación de las llamadas ventas con resguardo de fideicomiso, (*trust receipt*) establecemos como regla local la siguiente:

1. En Puerto Rico resulta perfectamente legal, cualquier contrato de resguardo de fideicomiso donde un importador o un distribuidor local de mercadería, fabricada dentro o fuera de Puerto Rico, convenga con un banco o una compañía de crédito, que mediante la extensión del crédito correspondiente para la obtención de la cosa, el banco o la compañía de crédito, retenga el título de propiedad o el derecho de posesión de la cosa comprada, hasta tanto el importador o distribuidor haya pagado el precio de compra y los gastos de crédito, siendo dicha obligación válida y exigible para ambas partes entre sí.

2. El importador o distribuidor tiene sobre la cosa comprada en virtud de una venta con resguardo de fideicomiso, un derecho de propiedad reconocible, que puede transformarse en un derecho total de propiedad, tan pronto pague el precio de compra, sujeto a la retención de título y al derecho de posesión que posee el banco o compañía de crédito, mientras no se le pague el precio adelantado para la compra de la cosa.

No erró por lo tanto el anterior Tribunal de Contribuciones de Puerto Rico al mantener la imposición de contribuciones sobre la propiedad a la mercadería que se encontraba

en los muelles al 15 de enero de 1949, ya que la peticionaria tenía un derecho de propiedad reconocible sobre dicha mercadería, desde el momento mismo en que la compraventa se perfeccionó en Nueva York, y por lo tanto, lo tenía en cualquiera etapa sucesiva de entrega, posterior al convenio sobre la cosa y el precio, independientemente del derecho de retención de título o derecho de posesión para fines de garantía, que tuviera sobre ella el Banco Popular de Puerto Rico, por haber anticipado el precio de compra.

En cuanto al segundo error la peticionaria no nos ha convencido de nuestra obligación de aplicar la política judicial del *Stare Decisis*, máxime en un caso como éste, donde la decisión no era de un tribunal de última instancia.

*Debe confirmarse la sentencia apelada.*

Los Jueces Asociados Sres. Marrero y Sifre no intervinieron.